# THE MERCHANTS' AND MINERS' TRANSPORTATION COMPANY *vs.* THE STATE OF MARYLAND, FOR THE USE OF ANNIE HAZELTON, WIDOW.

*Master and Servant—Negligence—Evidence at Variance With Pleading —Employee Falling Into Water While Making Fast à Hawser.*

When the declaration, as did the bill of particulars filed therewith, in an action to recover damages for a death alleged to have been caused by defendant's negligence, sets forth that the deceased, although employed by the defendant on its wharf as a stevedore, was directed to seize a hawser flung from a vessel and make it fast, and that he became entangled in the rope and was dragged overboard and drowned, while the evidence in the case shows that he did not become so entangled and dragged overboard but that he lost his balance and so fell into the water, a prayer instructing the jury that under the pleadings and evidence the plaintiff is not entitled to recover, should be granted, because a defendant has a right to have the jury confined to the issue made by the pleadings.

*Held*, further, that under these pleadings, there is no right of recovery for defendant's alleged negligence, in failing to rescue the deceased after he fell into the water.

Plaintiff's deceased was employed as a line tender and stevedore on the wharf of the defendant. He was ordered to catch and make fast a hawser thrown to the wharf from a vessel, and while lifting the hawser over an obstacle on the wharf, in moving it from one cleat to another, he lost his balance and fell overboard and was drowned. The hawser itself remained on the wharf. The deceased had done similar work for two years and the danger incident to it was obvious and known to him. *Held*, that since there was no evidence of any negligence on the part of the defendant, the case should be withdrawn from the jury.

*Decided June 25th, 1908.*

Appeal from the Baltimore City Court (SHARP, J.), where there was a judgment on verdict for the plaintiff for $3,500.

The cause was argued before BOYD, C. J., BRISCOE; PEARCE, SCHMUCKER, BURKE, WORTHINGTON and HENRY, JJ.

*William L. Marbury* and *Walter L. Clark* (with whom was *John J. Donaldson* on the brief), for the appellant.

*Emil Budnitz* and *J. Cookman Boyd*, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This action was brought in the Baltimore City Court, by the appellee, against the appellant, to recover damages for the death, on the 20th of March, 1906, of William Harry Hazelton, the husband of the equitable plaintiff, while in the employ of the appellant corporation as a line tender on one of its wharves, in Baltimore City by reason of the alleged negligence of the appellant company.

The declaration alleges that the defendant is the owner of and operates a line of steamships running to and from Baltimore and that on the 20th of March, 1906, the deceased, while using due care and caution, and by reason of the wrongful act, neglect and default of the defendant, its officers and agents became entangled with a hawser thrown from one of the defendants steamships to its wharf in Baltimore City, and he was thereby dragged overboard and drowned. And further, that the deceased was employed by the defendant as a stevedore, but that he was ordered by the defendant to catch and make fast the hawser, although the same was not within the scope of his employment and although unknown to the deceased, and not notified thereof, but well known to the defendant, it was exceedingly dangerous for one man alone to attempt to catch and make fast the hawser, as the deceased was ordered to do, whereupon he was dragged overboard and drowned.

The bill of particulars filed by the plaintiff states the cause of the action as follows: to recover damages for the death of the deceased which was caused by the wrongful act, neglect and default of the defendant company in ordering and causing the deceased, who was employed as a stevedore by the defendant, to attempt to catch and make fast to the defendant's wharf, a hawser thrown from one of the defendant's ships, whereby he became entangled in same and was dragged overboard and drowned.

Secondly, that it was well known to the defendant, although

it was not known to the decedent and he was not warned, that it was dangerous for one man alone to attempt to catch and make fast the hawser, and the same was without the scope of the decedent's employment.

At the trial of the case, the appellant reserved three exceptions. Two to the admission of evidence and the third, to the granting of the plaintiff's prayer as to the measure of damages and to the rejection of the defendant's four prayers which instructed the jury that under the evidence and upon the pleadings, the verdict of the jury must be for the defendant upon the issues joined.

The objection to the admissibility of evidence embraced in the second exception, and to the exception, to the granting of the plaintiff's prayer, was practically abandoned in this Court, but it is contended, that there was error in the action of the Court, in its ruling upon the admission of the testimony, in the first bill of exception and in its refusal to grant the appellant's prayers, set out in its third bill of exceptions.

As these prayers present the prominent questions upon which the decision of the case must turn, and as we are of the opinion, after a careful consideration of the record, that they should have been granted, we will proceed, to state, as briefly as possible, the reasons for the conclusion, we have reached.

It will be seen, that the specific allegation of defendant's negligence, as set out in both the declaration and the bill of particulars and the ground upon which the recovery sought, was, by reason of the neglect and default of the defendant, its officers and agents, the deceased became entangled with a hawser thrown from one of the defendant's steamships to its wharf in Baltimore City, and was dragged overboard and drowned. And that it was dangerous for one man alone to attempt to catch and make fast the hawser; that the work was without the scope of the decedent's employment, that the danger was well known to the defendant, but not known to the decedent, and he was not warned of the danger.

The defendant's prayers are based upon the insufficiency of

evidence to prove that the death of Hazelton, was occasioned by the negligence of the defendant as alleged in the pleadings. It is well settled that the defendant had the undoubted right to have the jury confined to the issue made by the pleadings. *City Pass. Ry. Co.* v. *Nugent*, 86 Md. 360; *Fletcher* v. *Dixon*, 107 Md. 420.

The burden of proof was upon the plaintiff to establish the allegations in the declaration as the ground of the action, and failing to offer evidence tending to prove these, it was error in the Court below to refuse the defendant's prayers.

The law is well established that the fact of negligence is for the jury where there is evidence legally sufficient to prove it, but in the absence of such evidence, it is the duty of the Court, to withdraw the case from the consideration of the jury· All the cases hold, that a scintilla of evidence, or a mere surmise that there may have been negligence on the part of the defendant, clearly would not justify the Judge in leaving the case to the jury; there must be evidence upon which they might reasonably and properly conclude that there was negligence.

In the leading case of *State* v. *Malster*, 57 Md. 309, JUDGE ALVEY in delivering the opinion of this Court, thus lays down the rule. It is incumbent upon the plaintiff, to show affirmatively all the elements of the right to recover. Unless the Court can see that there is such evidence in the cause as will fairly support a verdict, if the jury should find it to be credible and proper to be made the basis of their finding, it becomes an imperative duty of the Court to instruct the jury to find their verdict for the defendant. Conjecture or irrational speculation by the jury, as to conclusions of fact, should not be allowed, and unless there be such proof as would justify a deduction of a rational conclusion as to the existence of the essential facts to entitle the plaintiff to recover, the instruction should be for the defendant. Otherwise there would be no certainty attained and often the grossest injustice would be inflicted, in the trial by jury.

In the case at bar, there was no evidence whatever that the

deceased became entangled in the rope or hawser that was thrown from the defendant's steamship to the wharf, and was thereby dragged overboard and drowned, as alleged in the declaration.  On the contrary, the evidence is to the effect, that he was not entangled in the rope at all and was not dragged or pulled over by the rope, because the rope remained on the pier, after he had fallen in the water.  According to the undisputed facts of the case as shown by the testimony, the deceased while attempting to lift the rope over the last pile, lost his balance and fell overboard, and there is no evidence whatever tending to prove negligence on the part of the defendant company in connection with it.

The witness Fisher, who was present at the time of the acdent and saw the deceased when he fell overboard, testified as follows:

Q. What was he doing after you left him and went up forward?

A. You see after I went forward, he had to take the line off the cleat, and lift it on the pier—it was not on a level.

Q. Wasn't it on the same level?

A. No, sir, he was down on a little flat.

Q. How far up did he have to take it?

A. The step was about three steps or something like that.

Q. You looked down and saw him—what was he doing then?

A. He had got the line over around the corner, and was bringing it along the side of the wharf to the cleat, and in bringing his line along, these little piles stick up, and this line of his was catching in them piles, and you have to swing that line over the pile you know to carry it along further, and he had stopped there—them piles held it—and in swinging this line you see, in swinging over these piles, that pulled him off his balance you see.

He further testified, that the eye of the hawser was still on the wharf after the man had fallen in the water, and he put it over the cleat.

But apart, from a failure of evidence to establish that the death of the deceased was directly caused by the negligence of the appellant company or its agents, and as alleged in the pleadings, there was no legally sufficient evidence to show a

failure on its part to perform any duty that it owed the appellee's husband, the omission of which caused his death, and which would support the verdict rendered in the case.

This legal proposition was directly submitted by the appellant's fourth prayer. The burden of proof was upon the appellee to establish the negligence as a basis of the action, and there being a failure of evidence in this respect tending to prove it, there was error in the refusal of the Court to grant this prayer.

It is contended, however, that it was dangerous for one man alone to attempt to catch and make fast the hawser, that this danger was known to the defendant, but the plaintiff was not warned of it, and the same was without the scope of his employment.

The settled principle in England, and in this State, applicable to the liability of the master to his employee, is clearly stated in the case of *Wood* v. *Heiges*, 83 Md. 267: When a servant engages to perform certain services for a compensation, it is implied as a part of the contract, that, as between himself and his employer, he assumes all the risks incident to the service. And these risks include such as arise, from the hazardous character of the service and from the negligence of other servants in the same employment even though they may be in a different grade. But the master himself is bound to use ordinary (that is due and reasonable) care and diligence to provide proper materials and appliances to do the work and in the selection and employment of competent and careful fellow servants. In addition to this, the master cannot negligently expose the servant to such extraordinary perils in the course of the employment that the servant from the want of knowledge, skill, or physical ability, cannot by ordinary care and prudence, under all the circumstance of the case guard himself against them. *State* v. *Malster et al.*, 57 Md. 307; *Wonder* v. *B. & O. R. R. Co.*, 32 Md. 417.

In the case, now before us, there is no contention or intimation that the master did not exercise due and reasonable care in providing safe and proper materials and appliances and

premises to do the character of work he was sent to do, or in the selection of fellow servants of competent skill and prudence.

The deceased was employed as a stevedore, whose general duty was to assist in loading and unloading freight on board the steamers at the wharves, and also to attend as a "line tender," that is to catch the lines when the ships came in.

On the day of the accident the deceased, with one Fisher, was sent from Pier No. 5 to Pier No. 6, in Baltimore City, to the Steamer "Nantucket" to catch her lines and make her fast to the wharf. They caught the stern line and made it fast to the cleat. The mate of the boat, then directed them to catch the forward line and make it fast, stating that it did not take two men to attend to one line, and "sent one forward and kept one aft." Fisher took the forward line and made it fast. The deceased while attempting to remove the stern line from the cleat and make it fast on another, lost his balance and fell overboard, as heretofore stated. There was positive and uncontradicted evidence, that he had been employed to do similar work on another occasion, and had caught lines before. He had worked for the company, on its wharves for two years, in connection with mooring vessels and handling lines. There was no evidence of inexperience in the work he was sent to do, and he voluntarily undertook the employment. The risk attending and surrounding the handling the line was open, patent and obvious, and must have been known to any man of average intelligence, and there is no proof "that any of his senses were impaired or that he was not possessed of ordinary power of observation." There was testimony also to the effect, that anybody could handle these lines, who had worked around ships and seen lines handled, and who had sufficient "presence of mind," to do the work.

In *Gans Salvage Co. v. Byrnes*, 102 Md. 249, it is distinctly said:. If the place was really dangerous the appellees must have known that it was because the means of knowledge were as open and obvious to him as to the master and by voluntarily working there he assumed the risks of being in-

jured by causes which were open and obvious and he cannot hold the employer responsible in damages if those open and obvious causes produced the injuries.

In *Wood* v. *Heiges*, 83 Md. 269, it is said:     The master is not an insurer of the servant's safety.     He cannot be bound for his servant's injury without being chargeable with some neglect of duty, measured by the standard of ordinary care. On the other hand, the servant is under an obligation to provide for his own safety when danger is either known to him, or is discoverable by the exercise of ordinary care.     He must take ordinary care to learn the dangers which are likely to beset him, and where the servant is as well acquainted as the master with the dangerous nature of the instrument used he cannot recover.

Upon the whole record, we are of the opinion, there was a failure of evidence to prove negligence on the part of the defendant or its agents, as alleged in the pleadings, and there was a legal insufficiency of evidence to show that the death of Hazelton was caused by failure of the appellant to discharge any of its legal duties towards him.

As to the right of recovery for alleged negligence, in failing to save or rescue the deceased, after he fell into the water, we need only say, there was no such issue of negligence involved in the case on the pleadings.     The suit was based upon a charge in the declaration for negligence in causing the deceased to be dragged overboard by becoming entangled with a hawser thrown from one of the defendant's steamships to its wharf, and he was thereby dragged overboard and drowned. There could be no recovery based upon subsequent negligence, under the pleadings in this case. *Fletcher* v. *Dixon*, 107 Md. 420; *City Pass. Ry. Co.* v. *Nugent*, 86 Md. 360.

It follows, for the reasons given, there was error in the refusal of the Court below to grant the appellant's prayers withdrawing the case from the jury, so the judgment appealed from, must be reversed, and as it is apparent the appellee is not entitled to recover a new trial will not be awarded.

*Judgment reversed with costs, without awarding a new trial.*