# CASPARIS STONE CO.

## *vs.*

# ALISANDRO BONCORE.

### AND

# ALISANDRO BONCORE

## *vs.*

# CASPARIS STONE CO.'

*Negligence: damages; gist of action; breach of some duty; burden of proof.   Quarrying: explosion of dynamite.*

In an action for damages for injuries received from the alleged negligence of the defendant, whatever the facts and circumstances may be, unless there is some evidence of negligence, or evidence from which negligence may be legally inferred, as the result of some act or omission on the part of the defendant, the case should be withdrawn from the consideration of the jury.
                                                              p. 450

The defendant, by offering evidence after the refusal by the Court to grant his prayer taking the case from the jury on the ground of lack of evidence, thereby waives his right to object to the rejection of such prayer.                        p. 450

In an action of damages against a quarry company for injuries received by a workman who was employed in tamping dynamite and earth in a hole preparatory to a blast, it did not appear by any evidence, except the conjecture of an expert, that the shape or kind of tool complained of had any connection with the accident; *held,* that the case should have been withdrawn from the consideration of the jury.                    p. 456

To entitle an employee to recover against a master on the ground of negligence, the foundation of the right rests upon the negligence of the master, and unless there has been some breach of duty on his part there can be no liability because there has been no neglect.                                  p. 454

*Decided June 26th, 1913.*

Two appeals in one record from the Circuit Court for Harford County (HARLAN, J.).

The facts are stated in the opinion of the Court.

The causes were argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Joseph N. Ulman* and *Clarence A. Tucker* (with whom were *Samuel J. Harman* and *Charles H. Knapp*, on the brief), for the Casparis Stone Company.

*Fahey & Brown* and *J. J. Archer*, for Alisandro Boncore.

STOCKBRIDGE, J., delivered the opinion of the Court.

This is an action for damages for personal injuries received by the plaintiff under a chain of circumstances of unusual character. The important question to be decided is whether the facts as proven make out a case of negligence upon the part of the defendant sufficient to entitle the case to be submitted to a jury at all. Whatever the facts or circumstances may be, unless there is some evidence of negligence, or evidence from which negligence may be legally inferred, the result of some act of omission or commission on the part of the defendant, there is nothing which calls for the submission of the case to the jury. At the conclusion of the plaintiff's evidence a prayer was offered by the defendant asking an instruction in its favor upon the plaintiff's evidence, and this having been refused the prayer was renewed upon the conclusion of all the testimony in the case. At this time the Court is only concerned with the prayer as offered at the conclusion of the entire testimony, because as has been repeatedly held by this Court the defendant by offering evidence in its behalf waived any right, which it would otherwise have had, to rely upon the prayer as offered at the conclusion of the plaintiff's evidence. *Knecht* v. *Mooney*, 118 Md. 583.

The facts as they appear from the record are:

The Casparis Stone Company was operating two quarries, designated respectively as the old and the new, near Havre de Grace, in Harford County. The point where the accident to the plaintiff occurred was near the new quarry. For some months the defendant had been engaged in drilling holes in which to place the dynamite for the blasting to be made. These holes ranged in depth from forty to one hundred and five feet; the larger ones being approximately five inches in diameter. The explosive to be used was dynamite known as 60%. which is an explosive of extremely high power, consisting of sixty parts nitro-glycerine to forty parts infusorial earth, the function of which was to hold the nitro-glycerine together. The general foreman employed on the job was a man by the name of Devitt, and immediately under him was James Boncore, a brother of the plaintiff who was known as the powder boss. His duties were to attend to the loading or charging of the borings which had been made, and apparently also to superintend, if he did not actually perform the work. of igniting the blasts. Being desirous of expediting the work, a second gang of men was brought from the old quarry to the new, to perform the same duties of charging the borings with the explosive. At the head of this second gang was Alisandro Boncore, the plaintiff in this case.

The process of charging the holes consisted in dropping or pouring into them a certain amount of dynamite, and then tamping it down firmly in place ready for ignition, either by an electric current or by means of a fuse and cap, the latter being known as mud capping, and ordinarily employed where the blasting operation was to be carried on out in the open, for breaking up into smaller pieces the larger fragments of rocks which had been dislodged. For the purpose of this tamping the defendant company provided wooden poles. some sixteen or eighteen feet in length. fitted with a sleeve so that they might be successively joined together when a greater depth was required to be reached than the length of a single

pole. These poles appear to have had a diameter of approximately two inches. Instead of using this appliance James Boncore had, and was using for tamping purposes an instrument made by taking a piece of iron pipe into one end of which was inserted a conical wooden plug driven in with a maul. This plug projected somewhere from three to five inches beyond the end of the pipe. The other end of the pipe was open, but in some manner a handle was attached to it, so that it could be suspended by means of a pulley rigged on a tripod, then lowered into the boring and by means of the other end of the rope, which passed over the pulley, raised some three or four feet for the purpose of tamping, or entirely withdrawn. There is a conflict of evidence whether this form of an implement for tamping was provided by Devitt, the general foreman, or by James Boncore; but if by the latter, its use was continued with the knowledge and apparently with the sanction of Devitt. When the second gang was brought from the old to the new quarry, under the charge of Alisandro Boncore a similar instrument for tamping was made for use by him. It apparently differed in one respect only from the one first made, namely, in that the handle at the open end was attached to the pipe by means of bolts and nuts which projected a quarter of an inch or thereabouts on the outside of this tool. On the morning of the day of the accident, and while using this second tamper, smoke and flame, but unaccompanied by any explosion, burst from the boring in which the tamping was being done. As soon as this subsided, the tamping tool was withdrawn from the hole, and James Boncore believing the fire to have been caused by the projecting bolts striking the sides of the boring, to which some particles of the nitro-glycerine had adhered, thereby causing sufficient friction to ignite these particles of nitroglycerine, directed one of the workmen to take the instrument to the blacksmith shop a short distance off, and have the projecting bolts removed. There was at this time in the neighborhood of ten to twelve feet of water in the bottom of the

boring into which the nitro-glycerine was poured. ·By reason of the greater specific gravity the nitro-glycerine would readily settle to the bottom, and the water being deeper than the length of the tamping pipe, the pipe of course became filled with water and particles of sand, so when James Boncore caused the pipe to be withdrawn from the boring in order to have it sent to the blacksmith shop, he had the pipe emptied of whatever sand and water it contained. When the pipe was delivered to the blacksmith he removed the bolts, as directed, and then in furtherance of what he understood to be his instructions, started to close the upper end of the pipe by heating and welding the iron sides together. Accordingly having heated this end of the pipe to a welding heat he placed it upon his anvil, and with his hammer proceeded to mash the ends together. This not having been fully completed before the iron was cooled, he inserted it a second time in his fire, and a second time with his hammer went through the process of welding it upon his anvil. In the meantime Alisandro Boncore had been sent by his brother James to the blacksmith shop to get and bring back the implement as soon as the work on it was completed, and while waiting for it Alisandro was standing in the doorway. For a third time the blacksmith inserted the end of the pipe in his fire for the continuation or completion of the welding process, and as he removed it let fall the other end, *i. e.,* the end in which the wooden plug was, upon his anvil and instantly there was an explosion, which seriously injured the plaintiff, knocked down the blacksmith and broke some of his bones, and partially demolished one side of the blacksmith's shanty. It is for the injuries so suffered by the plaintiff that this suit was brought.

In all such cases as this the foundation of the right to recover rests upon some negligent act on the part of the master. Unless there has been some breach of duty there can be no liability, because no negligence; so in the case of *Gans v. Byrnes,* 102 Md. 230, where the injury complained of was the falling of a wall; it was held that the mere falling of the

wall was not sufficient evidence of negligence on the part of the appellant, and this excluded any inference of negligence from the naked act which caused the injury. *Serio* v. *Murphy,* 99 Md. 545; *So. Balto. Car Works* v. *Schaefer,* 96 Md. 105; and applied to the present case no inference of an improper or dangerous tool can be drawn from the mere fact of the explosion, unless it be assumed that it would not have exploded if it had been a proper tool, but to assume that would be to assume as true the precise thing to be proved, and that assumption when adopted would then be substituted for evidence tending to establish the fact to be proved. Such a process would permit negligence to be inferred from the simple happening of the accident. In a case like this that cannot be done. This same principle was applied in the case of *Joyce* v. *Flanigan,* 111 Md. 481; *Buttner* v. *Steel Car Co.,* 101 Md. 168; and *Eyre Shoemaker Co.* v. *Mackin,* 116 Md. 63. The theory of the declaration is that the plaintiff was furnished by the defendant with a rammer constructed unsafely and with defective and improper materials, and that it was in an unsafe condition and unfit for the purpose for which it was furnished, which the defendant knew, or by the exercise of ordinary care could have known, but of which the plaintiff was ignorant; and by the second count, that the defendant negligently and carelessly furnished the plaintiff with an unsuitable and unsafe rammer for said work, and by the third count, that the defendant negligently and carelessly furnished the plaintiff with an unsuitable, defective, unsafe and dangerous rammer with which to do said work. When, however, the evidence is considered, to ascertain the respect in which the rammer, assuming it to have been furnished by the defendant, was constructed with defective and improper material, or was unsuitable, defective, unsafe or dangerous, the prominent fact is that the accident did not occur, and the plaintiff was in no wise injured, while the rammer was being used for the purpose for which it is claimed to have been made. On the contrary, the first rammer made out of

iron pipe appears to have been used throughout the entire operation, both before and after the accident out of which this case arises, without the slightest evidence or indication that it was in any manner unsuited for the work, improper to be used or dangerous in its use. While in the case of the second rammer, even if its original construction rendered it an unsafe appliance, the fire, which was occasioned by it in the boring, did not cause or in any manner contribute to the accident by which the plaintiff was injured.

Thus far the assumption has been that the tool in question was ordered to be made by the foreman Devitt, with regard to which as already noted there is conflict of evidence; but inasmuch as the phase of the case now under consideration is the refusal of the defendant's prayer to withdraw the case from the jury, the plaintiff is entitled to the assumption most favorable to him warranted by the evidence. The plaintiff claims the tool in question to have been unsuitable, improper and unsafe upon a very ingenious theory, namely, that when the rammer in question was plunged into the water, all of the dynamite had not been precipitated to the bottom of the boring, and that some of it was carried by the water and sand inside of the pipe, where it then settled in the bottom and was retained there by reason of the cone shape of the plug; that the inverting of the rammer for the purpose of emptying out whatever might be in the pipe, did not remove the nitroglycerine collected between the plug and the sides of the pipe, and that the concussion caused by the falling of the pipe on the anvil was the cause of the explosion, and that, therefore, the proximate cause of the accident was the method, the faulty method, of the construction of the instrument. But there is an insuperable objection to the adoption of this view—first, the evidence discloses, so far as it discloses anything, that the pipe was thoroughly emptied before being taken to the blacksmith's shop, and this is proved by the plaintiff's own witnesses; but, independently of that, to adopt the theory of the plaintiff, requires, first, the assumption or inference that all of the nitro-glycerine in the boring had not been precipi-

tated to the bottom, but that some of it was still in a state of suspense; second, that the nitro-glycerine being thus suspended passed into the pipe during some period of its submergence and was then precipitated to the bottom of the pipe between the wooden cone and the side of the pipe; third, that the pipe was not, as testified, entirely emptied, but that there remained in it some amount of the explosive; and, fourth, that it was the concussion incident to the dropping of the pipe upon the anvil which occasioned the blowing to pieces of the pipe; of none of which facts is there any evidence, except the conjecture of the expert, Janney. Therefore, to sustain the recovery, it must be done entirely upon hypotheses without evidence to support them. It is proper to say that the decisions in this country are very far from being uniform, and the cases of *Brownfield* v. *Chicago R. I. and P. Ry.*, 107 Iowa, 254, and *Brown* v. *The W. Riverside Coal Co.*, 28 L. R. A. n. s. 1260, are prominent examples of cases which take the opposite view; but whatever may be the law elsewhere, the cases in this State are too clear to admit of any conclusion other than that no sufficient negligence upon the part of the defendant has been shown to entitle the plaintiff to recover, and that, therefore, the second prayer of the defendant should have been granted.

There was much stress laid in the argument, and many authorities are cited upon the briefs of the counsel with regard to the assumption of risk, but in the view which this Court takes of the case it is unnecessary to discuss this point, and it also becomes unnecessary to deal with the question of the admissibility of certain expert testimony offered on behalf of the plaintiff, and which constitutes the basis of the cross-appeal.

For the reasons indicated the judgment below will be reversed without a new trial.

> *Judgment reversed, without a new trial, with costs to the appellant in the original appeal.*