WILLIAM ROSS HEVELL *v*. BALTIMORE TRANSIT COMPANY

[No. 56, October Term, 1937.]

*Decided January 12th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*L. Wethered Barroll* and *W. Albert Menchine,* with whom was *W. Lester Baldwin* on the brief, for the appellant.

*Wallis Giffen,* with whom were *Edward J. Colgan, Jr.,* and *Philip S. Ball* on the brief, for the appellee.

SHEHAN, J., delivered the opinion of the Court.

William Ross Hevell, the appellant, sued the Baltimore Transit Company and Charles H. Alexander for personal injuries which he alleges to have been done to him by the negligence of the defendants.

The appellant, on the evening of March 25th, 1936, boarded the car of the Baltimore Transit Company at the corner of Baltimore and Holliday Streets, as was his custom, and proceeded to the Bel Air Road, and then northwestwardly to Cliftmont Avenue, on which he resided. This avenue comes into the Bel Air Road but does not cross it. When in the act of alighting from the car, at or near Cliftmont Avenue, he was struck by the passing automobile of the defendant Charles H. Alexander and severely injured.

The declaration charges that the injury was caused by the negligence of both of the defendants.

At the close of the plaintiff's case, the court granted a demurrer prayer offered on the part of the Baltimore Transit Company, and from the judgment on the verdict resulting from the action of the court in granting this prayer, the plaintiff appeals. A judgment for $35,000 was recovered against Charles H. Alexander, the other defendant.

Further examination of the facts discloses that the street car was proceeding northward on the Bel Air Road, and the plaintiff, after the car had left the stop next to or just below Cliftmont Avenue, rang the signal bell for

the conductor to stop the car at Cliftmont Avenue, it being the next street and place to stop. The car had proceeded about one-fourth of the block when he pushed the bell and walked forward in the car, came to the front platform on which he stopped and lighted a cigarette while the car was still in motion. Here is presented a situation that is not easily understood. The plaintiff, directly and without equivocation, testified that, from the time he lit the cigarette, he remembered nothing, until eighteen days later, while still in the hospital, when a hazy recollection came to him, but, even after regaining his memory, none of the facts or events relating to the accident, after he stepped out on the platform of the car, could be recalled. This singular situation deprives us of any facts or circumstances about which he might have been expected to testify. Nothing extraordinary had happened in the movement or operation of the street car up to this time.

We will not consider the location of various objects at the junction of the Bel Air Road and Cliftmont Ave. This road is a broad thoroughfare, about fifty feet in width, with street car tracks on it, running in both directions. The distance between the curb and the nearest tracks on the east side is seventeen feet, and the width of Cliftmont Avenue is twenty-four feet and one inch, between the curbs. On both sides of the sidewalks on this avenue are grass plots, between the pavement and the curb on one side, and between the sidewalk and the building line on the other side. On the north side of Cliftmont Avenue, and extending up to the building line, are residences, and on the south side there is a church. At the southeast corner of this avenue is a lamp post and water plug. At or near the middle of the Bel Air Road, and on a line with the middle of Cliftmont Avenue, are two sewer plugs. A further consideration of the location of these plugs, and their bearing upon the case, will be given when the testimony of the witness, Milton Canter, is discussed. These distances, locations, and various objects and structures are important as they relate to the facts in dispute.

The street car, as it approached Cliftmont Avenue, was followed by the automobile of the defendant Alexander and driven by him. The distance of the outer track from the curb was seventeen feet. It is testified that, at some distance from Cliftmont Avenue, the right wheel of the automobile, as it proceeded, was about one foot from the curb. At or near Cliftmont Avenue Alexander undertook to pass the street car and struck the appellant as he was alighting, or after he had alighted, severely injuring him.

There is conflict in the testimony as to how and when the plaintiff was injured by the collision. The appellant being unable to throw any light on the situation or the events occurring at the time or immediately preceding the accident, we must turn to other witnesses for such further information and enlightenment as can be had. The defendant Alexander was called as a witness on the part of the plaintiff. The most significant fact stated by this defendant was that the car had not stopped when the plaintiff got off, but stopped after the accident occurred. At three different places in the testimony he made this statement, and once again in confirming an observation of the court. This is an important fact and we can best describe the situation by quoting from the testimony:

"Q. And this gentleman came out of the half-open doors, without stepping on the step of the street car, and got on the front of your machine. Is that your testimony? A. That's right. Q. That is your testimony? A. That's right. The Court: He did say, however, that he came out before the street car stopped. The Witness: Yes, sir." By Mr. Colgan:

"Q. And the street car had not stopped when he came out. A. No, sir. Q. Still going. Where did the street car stop after the accident? A. Almost past the street. When I picked Mr. Hevell up, the conductor, when they stopped their car, they came over and gave me help."

Considering the case on the theory that, before the street car had stopped, the plaintiff undertook to alight therefrom, and in view of all the other facts and circum-

stances in the case, he could not recover because of the obvious negligence on his part. His getting off the street car when in motion, with the door half open, at night, at or near the middle of a street, without looking for approaching automobiles and stepping in front of or upon a passing automobile, would constitute negligence. Assuming the above facts to be true, there can be no recovery for the reason above stated, but there is a divergence in the testimony of the plaintiff's witnesses as to what happened on that night at the scene of the accident.

There are only two other witnesses of importance, whose testimony relates to what actually occurred at or before the appellant was struck by the car of Charles H. Alexander. Their testimony, in important particulars, is at variance with that of Alexander, but, even so, it is no more favorable to the appellant than his. The plaintiff offered the city ordinance, article 30, section 65, of the Baltimore City Code of 1927, which provides that, "Each and every passenger street car in the city of Baltimore shall stop at the near side of the street crossing when stopping to take on passengers or to permit them to alight," and prescribes certain fines and penalties for a violation thereof. This ordinance is declaratory of a long recognized traffic regulation in the City of Baltimore. In that connection the witness Floyd M. McGonigle, who was seated on one of the longitudinal seats at the front of the car, in a position more favorable to observe what occurred than the other witnesses, testified that he heard the signal bell ring to stop the street car when about half way up the block and south of Cliftmont Avenue, that the appellant came forward, stepped on the platform and lighted a cigarette and, when the car stopped, the front door was just about on a line with the grass plot where he got off. This stop, according to this testimony, complied with the requirements of the ordinance. The court here interrogated the witness, and the following occurred:

"Q. Did you observe where the car had stopped? A. The door was—well, the door was just about with a

line on that grass plot, where he got off. The Court: I don't know what that means. You mean the front door of the street car? A. Yes, sir. The Court: Was on a line with what? A. The grass plot of Cliftmont Avenue. The car was standing—the nose of the automobile was standing almost on the car track, on the east rail. The Court: One minute. I want to understand this testimony. You said the door of the street car was on a line with the grass plot of Cliftmont Avenue? A. Yes, sir. Mr. Colgan: South side? A. Yes, sir. The Court: South side of Cliftmont Avenue? A. Yes, sir. The Court: Where did you say the automobile was? A. The nose of the car was almost on the east rail, facing west. The Court: Was it in front of the street car, or behind it? A. In front of the street car."

The latter part of this testimony evidently refers to the position of the street car and the automobile after the accident and after the car and the automobile had both come to a stop. These positions are also confirmed by the testimony of the driver of the cab which was employed in carrying Mr. Hevell to the hospital. The witness McGonigle, later in his testimony, stated: "Q. Is that where the fire plug could be located? A. Yes, sir, on the side next to the church. Q. You say that the front of that car was opposite the lower side or south side of that grass plot? A. Yes, sir, the plug would be more on a line. Q. It stopped about opposite the plug, you would say? Yes, sir. * * * Q. Prior to the happening of the accident, had you noticed anything unusual or extraordinary in the operation of the street car? A. No, sir. Q. Anything unusual about its method of stopping? A. When the man signaled to get off, the motorman started to slow up. I could notice the slowing up of the car. Q. Reduced his speed? A. Yes, sir. Q. There was nothing unusual about that, as far as you could see? A. No, sir. Q. I think you said that the last you saw of Mr. Hevell was when he stepped down from the platform to the step, and disappeared? A. Yes, sir. Q. And then at a very short interval after that somebody said,

'He is hit.' Did you hear the impact? A. No, sir. I turned around and started to talk to the gentleman that I was with, when he stepped off the car. Mr. Noel: Was the car in motion when he stepped off? The Witness: No, sir. Mr. Colgan: That's all. Do you recall if the doors were open wide when this gentleman got down? The Witness: Yes, sir. The doors were open wide when he got down."

The witness Canter substantially supports the testimony of McGonigle. This witness lives on the east side of the Bel Air Road and in the second house from the corner of Cliftmont Avenue. He stated that he heard a noise as of the screeching of brakes, a car coming to a stop, and an awful bump. Rushing to the window, he saw a black figure had landed right in front of his steps in the street. He exclaimed, "Some one has been hit." "I got to the body in a few minutes." His observations were first made from his front window. He noticed the street car where it was standing and stated, "There are two sewer plugs in the Bel Air Road, one in the middle of Bel Air Road and one out in the Bel Air Road opposite the one that is in the middle. One is near to the church curbing." That the street car was standing near the sewer plug, about three feet in back of the center of Cliftmont Avenue and the Bel Air Road. The machine was practically in front of the street car. That the front of the street car was located several feet south of the sewer plug, about three feet, approximately about seven feet south of the one in the middle of the street. Cliftmont Avenue being twenty-four feet in width, this would place the front of the street car about five feet beyond the south curb line of Cliftmont Avenue. The witness was not very definite about that, but said that the front of the street car was pretty close to the south side of Cliftmont avenue. "It was not very far." This witness was not in as good a place to judge the exact position of the front of the street car as was the witness McGonigle, but supports, in the main, his testimony. If this evidence is true, then the appellee had substantially complied with

the ordinance, and was neither in violation of it, nor guilty of negligence in stopping the car in an unlawful or an unsafe place to enable the plaintiff to alight, and, therefore, upon this theory of the case, there can be no recovery.

This court has said, in the case of *Casparis Stone Co. v. Boncore*, 121 Md. 449, 88 A. 250, that, "Whatever the facts or circumstances may be, unless there is some evidence of negligence, or evidence from which negligence may be legally inferred, the result of some act of omission or commission on the part of the defendant, there is nothing which calls for the submission of the case to the jury," and this requirement is not satisfied by mere conjecture and speculation as to how the injury complained of occurred. *Hagerstown & Frederick Ry. Co. v. State*, 129 Md. 318, 99 A. 376. Nor will a scintilla of evidence or a mere surmise that there may have been negligence justify the court in permitting the case to go to the jury. *Merchants' & Miners' Transportation Co. v. State, use of Hazelton*, 108 Md. 564, 70 A. 413.

If the testimony of Charles H. Alexander is believed, we must conclude that the plaintiff was himself guilty of negligence in alighting from the car through a partially opened door, while the car was in motion and after it had passed the corner of Cliftmont Avenue, and he cannot recover. On the other hand, if the testimony of McGonigle and Canter is believed, the defendant is not chargeable with negligence. In either event, the court, in granting the appellee's demurrer prayer, did not commit error.

From what we have said, the judgment below should be affirmed.

*Judgment affirmed, with costs to the appellee.*