# LOUIS H. BUTLER *v* REED-AVERY CO., A BODY CORPORATE

[No. 158, October Term, 1945.]

*Decided July 23, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, J. J.

*Murray MacNabb,* with whom was *Anne Ewell* on the brief, for the appellant.

Court declined to hear argument but *Paul M. Higinbothom and Samuel K. Dennis* appeared on the brief for the appellee.

GRASON, J., delivered the opinion of the Court.

Louis H. Butler, appellant, started to walk from his home, shortly after midnight on the morning of March 3, 1944, to the Federal Yeast Company, for the purpose of applying for work. On his way he traveled over Ralls Avenue (which is also known as Rails Avenue and Railroad Avenue) and while walking along that avenue he fell into a "dangerous chemical," which flowed from appel-

lee's plant "as a waste product into said Ralls Avenue" and accumulated "in said Avenue at a point 100 to 200 feet northwest from the intersection of said Ralls Avenue and Cleveland Street," which badly burned him, and caused him to suffer great pain and injury of a permanent character.

He charges that appellee operates a factory at or near Ralls Avenue, where it manufactures products used in connection with welding. In the course of the process in manufacturing its products it uses a chemical, and refuse was discharged from the factory of appellee in such a manner as to drain down across Ralls Avenue and collect therein, and it was this refuse, charged with a chemical substance, which flowed into and settled on Ralls Avenue, into which he fell and was injured. He instituted suit for damages, in the Superior Court of Baltimore City, and his amended declaration set out substantially what we have above detailed.

After some preliminary procedure, appellee filed the general issue plea and the case came on for trial on November 26, 1945. At the conclusion of appellant's testimony the court directed the jury to find its verdict for the defendant (appellee). On November 30, 1945, judgment on verdict was made absolute in favor of the defendant for costs, and from this judgment, on December 28, 1945, appellant filed his order for appeal. On March 15, 1946, this court passed an order extending the time for the appellant for filing transcript of record in this court to March 20, 1946, and the record was accordingly filed on that date in this court. The record made up by the clerk of the court below included a part of the pleadings and all of the testimony of the witnesses as stenographically reported in question and answer form, and contains two hundred and twenty-five pages. On March 22, 1946, counsel for appellant submitted to attorneys for appellee testimony in narrative form offered on behalf of appellant in the trial of the case below, although the record in the case was sent to this court on March 20, 1946. On March 27, 1946, counsel for appellee advised

counsel for appellant that it objected to the narrative form of the testimony proposed to be printed as a part of the record in this case, and stated if the narrative form of the testimony proposed had been seasonably submitted it would have been objected to by counsel for appellee. Notwithstanding the objection to the proposed narrative form of the testimony, appellant did not make any change therein and printed the same as the appendix to his brief. A motion to dismiss the appeal was filed by appellee.

The rules of this court require that an appellant shall promptly, after he enters an appeal, serve upon appellee a designation of the portions of the record, proceedings and evidence to be contained in the record, and within ten days thereafter appellee may file a designation of additional portions of the record, proceedings and evidence to be included. The appellant is required to furnish appellee with a statement of the parts of the record he proposes to put in his brief within ten days after the filing of the transcript of the record in this court, which record must be filed in this court within sixty days from the time the appeal is taken. Appellant may prepare and file with his designation a condensed statement in narrative form of all or part of the testimony, but if appellee is dissatisfied with the narrative statement he may require testimony in question and answer form to be substituted therefor. A brief must contain an appendix thereto which shall contain such parts of the record which it is desired to be read by this court. The appellant may file a reply brief and set forth in an appendix thereto such part of the record he may wish the court to read in view of the parts printed by appellee. See Sec. 1, paragraph (e), Sec. 2 Sec. 3, paragraph (c), Sec. 4 of Rule 39; Rules 1, 18 and 19 of this court.

These rules were in force at the time the appellant filed his order for an appeal to this court. They are plain, concise, and should be easily understood. They provide a means for each side to get before this court all the evidence that it is desired to be read by the court. When the

appellant disregards or violates these rules his case may be dismissed on motion, or by this court on its own motion.

It is clear from the record in this case that the appellant did not promptly, after the appeal was taken, serve on the appellee the portions of the record, proceedings and testimony to be contained in the record to be transmitted to this court. The record in this case contains all of the testimony taken at the trial of the case below. On March 22, 1946, after the record had been received in this court, the attorney for appellant submitted to attorneys for appellee a copy of the narrative form of testimony offered on behalf of appellant in the trial of the case. This was almost three months from the time the appeal was taken from the judgment below, and it would seem to be trifling with the court to contend that appellant acted promptly in the matter. The appellant's narrative form of the testimony having been objected to by appellee, he was required to reduce the testimony he desired the court to read to question and answer form. This he did not do, but filed the narrative form of testimony in the appendix to his brief, which had been objected to by the appellee. The appellee contends that this narrative form of the testimony is incorrect, unfair, and does not contain a full disclosure of the facts as presented to the court below. However this may be, the appellant has failed to comply with the rules of this court and his appeal might well be dismissed.

For a full discussion of this matter see the opinion of Chief Judge Marbury, in *Strohecker v. Schumacher & Seiler,* 185 Md. 44, 43 A. 2d 208. Full warning was given in that opinion of what would be done in the future when the rules of this court are violated. And in the case of *Condry v. Laurie,* 186 Md. 194, 46 A. 2d 196, Judge Collins discussed the matter at some length, and repeated the warning given by Judge Marbury in the opinion in the case referred to.

The most important point in the case at bar, like the Strohecker case, is whether the evidence was legally suf-

ficient to take the case to the jury. Appellant did not print, in the appendix to his brief, the testimony he desires the court to read, and his narrative form of the testimony was seasonably objected to by the appellee, and this objection required him to set out in the appendix to his brief, in question and answer form, the testimony he desired the court to read. This he did not do and we cannot consider the narrative form of the testimony contained in the appendix to appellant's brief. Neither can we take for facts what is set out in the appellant's brief because they are stated as an advocate would state a case before a jury, and its references to the narrative form of testimony cannot be considered. Certain objections to the court's ruling on evidence are referred to in the appellant's brief, and references in regard thereto are made to its appendix, which cannot be considered. A statement of Dr. Miller, which was offered in evidence by appellant and rejected by the court, is referred to, and appellant said that he offered to eliminate the objectionable parts, which was not permitted, and that he was obliged, by reason of this, to offer the testimony of another doctor who had been called by the defendant in pre-trial depositions. From this general statement in the brief, it would be impossible for us to say that the court committed error. There is nothing, therefore, in the appellant's brief that would require a reversal in this case.

Appellee printed parts of the testimony of the appellant, given in the case below, as an appendix to his brief. From this evidence, it appears from appellant's testimony, that the night in question was a cloudy, stormy and rainy night, and he said he "would know just what happened all right, but, anyhow, I woke up in the hospital the next morning." He said he either slipped or tripped and fell.

"Q. Well, did you fall into anything? What did you fall into? A. Well, when a man does that, he can't turn around and tell somebody what he fell into.

"Q. Do you know how far you had gone on this Ralls avenue before you had this accident? A. Well, it being a dark night—I know, naturally, being a human being, I would know just about where I went to, you understand. It was right on behind the Reed-Avery Company. Right in behind there."

He was asked to state what happened to him and he answered: "I either slipped or tripped, and I went into a unlevel place along there. I would not say whether it was a ditch or not, but I know I am the victim. I know that."

He was asked if he could locate the place where he fell and how far it was from the corner of Cleveland and Ralls Avenue. He answered: "Well, you couldn't miss it. You face it there right away."

"Q. Just where was it that you fell? A. Well, it would be just as hard to say for it was that dark, it would be hard to say just exactly what footage it might have been."

He was asked where the place that he fell was, with reference to the first building of appellee, and he answered. "Well, to tell you the truth I would not be able to say that exactly, but, at the same time, I know where I was at, all right. I know that."

And he finally said he was "right behind the Reed-Avery Company." He testified that he told "Bill Price," in July, when he was in the hospital: "I had fallen back of the Federal Yeast Company. * * * The Federal Yeast Company plant is at Colgate Creek" and "the office of the Reed-Avery Company is about three blocks from where this accident happened, but that is on Cleveland Avenue and Chesapeake Avenue. At the corner, rather."

From this testimony it appears that the appellant fell at some place on his journey from his home to the office of the Federal Yeast Company and that he "woke up in the hospital the next morning." It was a cloudy, stormy, rainy night. He does not appear to know how far he had traveled on Ralls Avenue when he fell, but

he says he fell "behind the Reed-Avery Company." He does not know whether he fell in a ditch or not. When asked to locate the place where he fell he stated: "Well, you couldn't miss it. You face it there right away." When pressed to tell where he fell he said: "Well, it would be just as hard to say for it was that dark, that would be hard to say just exactly what footage it might have been." He testified that he told a man named Bill Price that he had "fallen back of the Federal Yeast Company." He further stated that the plant of appellee and the Federal Yeast Company are next to each other, "only they can't join one another because it is a great vacancy of land around there" and that the "office of the Reed-Avery Company (appellee) is about three blocks from where this accident happened." This evidence on the part of the appellant is too confused, indistinct, uncertain, and contradictory to afford a basis for a rational conclusion as to where the accident happened.

"When a witness gives testimony which as to material facts is in such obvious and irreconcilable conflict that, if part of it be true the rest must be false, it cannot be accepted as the basis of a judicial conclusion." *Foble v. Knefely,* 176 Md. 474, 484, 6 A. 2d 48, 52, and authorities cited.

"On the other hand, the plaintiff's evidence was so inconclusive, contradictory, and uncertain as to not to be accepted as the basis of a legal conclusion." *Askin v. Long,* 176 Md. 545, 551, 6 A. 2d 246, 249. See *Oberfeld v. Eilers,* 171 Md. 332, at page 336, 189 A. 203.

In *Merchants' & Miners' Transp. Co. v. State, to Use of Hazelton,* 108 Md. 564, at page 567, 70 A. 413, at page 414, the court quoted from *State v. Malster,* 57 Md. 287, 309:

"Conjecture or irrational speculation by the jury as to conclusions of fact should not be allowed; and, unless there be such proof as would justify a deduction of a rational conclusion as to the existence of the essential facts to entitle the plaintiff to recover, the instruction should be for the defendant. Otherwise there would

be no certainty attained, and often the grossest injustice would be inflicted in the trial by jury."

In *United States Fidelity & Guaranty Co. v. Continental Baking Co.*, 172 Md. 24, at page 33, 190 A. 768, at page 772, involved a collision between two automobiles at a street intersection, the court said:

"The first answer that the light was changing to amber as he entered the intersection is canceled by his answer that it changed back at the safety zone, 40 to 70 feet away. Such testimony has no probative force or evidential value."

From this evidence we cannot say whether he was hurt on the premises of the Federal Yeast Company or hurt on Ralls Avenue. This is important because the theory of the appellant's case was that a liquid refuse containing a dangerous chemical was caused to be discharged from the plant of appellee into and across Ralls Avenue, a public highway, and that he fell into this dangerous substance and was burned. Manifestly, if appellant doesn't know where he fell there is no proof that he fell into this substance on Ralls Avenue, even if it is conceded as a fact that appellee emitted from its plant such dangerous substance into, on and across Ralls Avenue. In this state of appellant's evidence the case would have to be withdrawn from the jury and we turn to other testimony printed in appellee's brief to see if in this evidence there was a sufficient basis for the court to submit the case to the jury. *Hevell v. Baltimore Transit Co.*, 173 Md. 327, at page 330, 196 A. 103.

Ray Hilton testified that he was not familiar with Ralls Avenue, but there is "an unknown street down there that runs alongside of the railroad tracks." He stated that he worked at the Federal Yeast Company plant. He testified at length about a pipe leading from the Federal Yeast Compnay's plant, which connects up and goes out "into the waterfront." He said two pipes join in a ditch. He stated that he had never

been down that road (meaning Ralls Avenue) since the Reed-Avery Company had been there.

Charles Smith testified that "there was a drainage running through the Reed-Avery Company yard out into the railroad tracks and then on into these holes in the road" and "that came from what they called the Navy Building." He said he did not know what the chemical was, "only what my son had told me."

Mrs. Edna M. Smith, who evidently worked at appellee's plant, said she was never given any safety instructions and that the company never informed her "what this product was," but that her son informed her. "Q. Now, do you know whether there is any other product that is brought in there and mixed with this product before it reaches the highway? A. No, I don't * * * Not after it left on the outside, no, sir." She was asked if she knew of any persons who "have touched that material" and she answered, "Well, no one down there would touch it outside of the men," and she never saw them touch it because "they just wouldn't touch it, that's all."

Appellant then offered the deposition of Dr. Henry B. Perry, Jr., who saw the appellant after he was taken to the hospital. His testimony is that the appellant was suffering from heat burns.

"Q. Do you think that acids or chemicals had anything to do with his burns? A. No, sir.

"Q. For what kind of burns did you treat him? A. For burns due to heat."

This is practically all of the testimony offered by appellant, contained in appellee's brief, and is the only testimony in this case, under the rules of this court, that we are at liberty to consider.

The amended declaration in this case charged that the defendant caused a dangerous chemical to flow from its plant, as a waste product, into Ralls Avenue, and that the plaintiff, lawfully traveling this avenue, fell into the chemical thus discharged.

"It is well settled that the defendant had the undoubted right to have the jury confined to the issue made by the pleadings. * * * The burden of proof was upon the plaintiff to establish the allegations in the declaration as the ground of the action; and, failing to offer evidence tending to prove these, it was error in the court below to refuse the defendant's prayers. The law is well established that the fact of negligence is for the jury where there is evidence legally sufficient to prove it; but, in the absence of such evidence, it is the duty of the court to withdraw the case from the consideration of the jury. All the cases hold that a scintilla of evidence, or a mere surmise that there may have been negligence on the part of the defendant, clearly would not justify the judge in leaving the case to the jury. There must be evidence upon which they might reasonably and properly conclude that there was negligence." *Merchants' & Miners' Transp. Co. v. State, to Use of Hazelton, supra; Casparis Stone Co. v. Boncore,* 121 Md. 449, 88 A. 250.

In this case there is no evidence legally sufficient to show where appellant fell. The declaration charges that the appellant's burns were due to a chemical substance, and the only medical proof in the case is that he suffered heat burns. There is no evidence in the case that the substance, if any, at the time it was discharged from the plant of the appellee, was charged with a chemical that would cause one to be burned if he fell into it. And there is a failure of evidence that appellee discharged from its plant liquid refuse of such a high temperature that it would cause one to be burned who came into contact with it. The amended declaration charged that the injury was caused by a chemical and not by heat. The evidence of the appellant, therefore, it too vague, indefinite, and speculative to constitute a basis from which a jury could arrive at a rational conclusion. This being so, the court was correct in withdrawing the case from the jury.

*Judgment affirmed, with costs to appellee.*