LOUIS OBERFELD ET AL *v.* CHRISTOPHER P. EILERS, FOR HIMSELF AND TO THE USE OF CALIFORNIA INSURANCE COMPANY

[No. 58, October Term, 1936.]

*Decided January 13th, 1937.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Walter L. Clark* and *Clater W. Smith,* with whom was *J. Gilbert Prendergast* on the brief, for the appellants.

*W. Hamilton Whiteford,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

This case is the result of a collision of the trucks of the respective parties on the Philadelphia road, near Bradshaw, in Baltimore County, on the night of June 9th, 1934. From a judgment for the plaintiff, the defendants appeal.

The plaintiff, Christopher P. Eilers, was proceeding northward, driving a Ford one and a half-ton truck, converted by the addition of what is known as a "high-low equipment" into a three-ton truck. It was loaded with seven and a half tons of sheet iron destined for Philadelphia. The truck of the defendants, Louis and Oscar P.

Oberfeld, partners trading as Overnight Transportation Company, a Mack trailer truck, was being driven south towards Baltimore by Samuel Patti. The trucks came together about fifty feet south of the bridge over the Gunpowder River. The road is twenty-one feet wide and curves slightly to the left as it approaches the bridge from the south. The headlights of each truck were visible to the driver of the other for a considerable distance from the point of the collision. The plaintiff's truck was a complete wreck. The trailer part of the defendants' truck only was damaged, the two left rear tires blown out, with some damage to the left front of the body. Both trucks were going at a moderate rate of speed, about thirty miles an hour.

There were two witnesses to the accident, the plaintiff and the driver of the defendants' truck. The defendants' contention is that there was no legally sufficient evidence of the defendants' negligence, and that even if it was sufficient, the plaintiff was guilty of contributory negligence as a matter of law, and that one of the demurrer prayers for a directed verdict, submitting both theories to the court, should have been granted. It is necessary, therefore, to review the plaintiff's testimony and such of the defendants' driver's as may tend to support it.

The plaintiff testified: "The road is down grade toward the bridge going north. As you cross the Gunpowder Falls there is also a hill that comes down. As I started down this hill and before I got to the curve I saw lights coming. I kept well to the center of the road, and when I approached this slight curve I was hit. I lost control of the truck and it turned over and burned. As I was approaching this curve in the road I was well to the right side of the road. * * * I saw the truck that later collided with me as I was part of the way down the hill. At that time it was coming across the bridge." If he had looked, he would have seen it a considerable distance north of the bridge. *Webb-Pepploe v. Cooper,* 159 Md. 426, 151 A. 235; *Gitomir v. United Rwys. & Elec. Co.,* 157 Md. 464, 146 A. 279. "I saw it coming toward me and it swayed

out toward the center of the road at the curve. I came about the same time and it hit me. I could tell it swayed out toward the center of the road by knowing I was on the right side of the road. It swayed out toward me. I kept as far to the right as possible. The bodies of the two cars struck one another. The first point of collision on my truck was the left front fender on the top. It collided with the left part of the trailer on the left side." At the time of the collision he said the Mack truck was "Well over the center of the road." "Q. Well over the center of the road? A. Yes. * * * It was in the middle of the road I am quite sure. * * * it was a good ten feet in the road, ten and a half. About that point I was jack-knifed; the front end was turned to the right. The tractor was to the right farther than the corner of the body. It (the trailer) would hang over the center of the road at that rate. "Q. To the left of the center? A. Yes, sir."

Plaintiff testified that after the accident he saw "marks on the road that led up to the left front wheel of the (Mack) truck on the right side of the road. A short distance below where the wreckage was it led up to the center of the road and then to the right hand side of the road where they parked." "Q. In other words, they started the right of the center of the road and lead up to the center of the road where the wreckage was in the road? A. Yes, sir."

The uncontradicted evidence was that the Mack truck had its two left rear tires blown out, so that, in being run off its right of the road, they did about as much dragging as revolving and were more calculated to leave marks than any other wheels. The plaintiff has testified to "marks," plural, not a "mark," singular, so that we are left in a quandary as to whether the marks were made by the left front or left rear tires of defendants' truck and this evidence has little, if any, probative force.

On cross-examination, the plaintiff, asked, "How far down the hill were you then when you saw the (Mack) truck coming across the bridge?" answered, "Partly down

to the scene of the accident; part way down." The collision occurred "possibly fifty feet" south of the bridge. When he saw it sway towards him it was "not very far away"; "Possibly twenty-five feet. Q. What did you do when you saw it sway out towards you? A. Kept well to my right. Q. You mean you continued on the same course you were going? A. I kept well to the right." His answer to the next question was, "I kept on the course I was on. Q. You held to your course? A. Yes."

He said the defendants' truck was "ten and a half feet from the right hand edge of the road," and "that would bring it up to the center of the road" and would "mean that the left side of the truck was ten and a half feet from the right hand edge of the road," and "that was its position at the time of the accident." Regarding the marks in the road he was asked: "Q. That line did not go over on your side of the road, did it? It went up to the center of the road? A. Yes, sir. Q. Did you measure that or are you just estimating it? A. I estimated it."

The paved portion of the road was, as stated, twenty-one feet wide, macadam center, with concrete shoulders. On re-direct examination he said he was driving "on the macadam part of the road close to the edge; possibly three and a half feet from the outside, I think." The left side of his truck was "probably six inches from the center of the road. Probably eight inches." The plaintiff testified that he kept "well to the center," "as far to the right as possible"; three and a half feet from the right of the traveled, paved, portion of the road, from six to eight inches from the center; when he saw the truck sway toward him "kept well to his right" and "held to (his) course." It can be said of such evidence here, as in *Slacum v. Jolley,* 153 Md. 343, 351, 138 A. 244, 248, that it "is too inconclusive, contradictory, and uncertain to be the basis of a legal conclusion."

The truck was eighty-eight inches wide. The sum of eighty-eight inches, three and a half feet, or forty-two inches, equals eleven feet, which would place his truck four inches over the center of the road, instead of six

or eight inches to the right. There was no center line painted on the road, so that the plaintiff had to resort to estimates and rely on a matter of inches to sustain his claim of negligence against the defendants. His contention is that, if the jury believes he was not over the center of the road, and the Mack truck was, no matter how slight the encroachment, then the verdict should be for the plaintiff, and he relies on the rule of the road contained in Code (Supp. 1935), art. 56, sec. 209, Acts of 1929, c. 224, to support this contention, by which it is provided that "All vehicles * * * shall at all times keep to the right of the center of the highway upon all highways of sufficient width * * * unless it is impracticable to travel on such side of the highway." This is the same rule discussed in *Lange v. Affleck,* 160 Md. 695, 155 A. 150, where it was held that one may be driving on the right of the center of the road and still be held negligent for his failure to exercise due care and caution to avoid a collision with a car coming from the opposite direction which had encroached on his side of the road. Lange was driving a car in which Affleck was a guest. It collided with a car driven by one See, who, according to Lange "was cutting over, angling over" to make a left turn on the Reisterstown road into Milford avenue. But he also testified, " 'If I would have turned possibly a little more to the right it might be possible that the accident could have been avoided.' In other words, if he had done what he could and should have done there might not have been a collision, regardless of his charge of negligence against the driver of the other car."

In the instant case the plaintiff testified that he had three and a half feet of the paved road on his right, yet he held to his course instead of turning slightly to the right, as in the exercise of care and caution he should have done. And at this point it is in order to call attention to another provision of section 209 of article 56 of the Code which, if it had been observed by either of the drivers, plaintiff or defendants, would have avoided this collision, which reads: "Slow-moving vehicles, including

motor trucks, shall at all times keep as close to the right-hand side of the highway as practicable, regard being had to the width and construction of such highway." *Kelly v. Huber Baking Co.,* 145 Md. 321, 334, 125 A. 782. There can be no contention that there was not plenty of room for both cars on this road. If these trucks had been driven in the center of their respective halves of the road, each would have had eighteen inches margin on the outside, with thirty-six inches between them, and yet there they were, contesting the center of the road.

The case of *Brown v. Sanborn,* 131 Me. 53, 158 A. 855, 856, is this exact case, except that the traveled way was one foot narrower than here; the place of collision at or near the foot of two hills, cars visible to the respective drivers for at least one hundred and fifty feet—here it was much more—and the trucks came together in the center of the road, each putting the other's truck as much as two feet over the other's right of way. "Defendant turned to his right, but not sufficiently to avoid the left wheel of his truck coming in contact with the left wheel of plaintiff's truck. Plaintiff's agent, instead of turning to his right, attempted to stop, but failed to do so, then endeavored to turn to the right and, the effort being unsuccessful, continued to move slowly ahead in the same direction in which he had been traveling, up to the time of impact." And the opinion in that case concludes: "The situation created no emergency. It was the ordinary condition with which drivers of motor vehicles are frequently confronted. There was nothing to confuse, bewilder, or frighten a driver of ordinary intelligence and experience. The collision could readily have been avoided by the exercise of reasonable care on the part of plaintiff's agent." Compare *Burhans v. Burhans,* 159 Md. 370, 150 A. 795.

Viewing the plaintiff's testimony in the light most favorable to him, it makes nothing but a case of concurrent negligence, each of the drivers contributing a share, without which the collision would not and could not have

happened. The defendants' B, contributory negligence, prayer for a directed verdict should have been granted.

*Judgment reversed, without a new trial, with costs to the appellant.*