OLNEY ET AL. *v.* CARMICHAEL ET AL.

[No. 120, October Term, 1952.]

*Decided April 17, 1953.*

228

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS and HAMMOND, JJ.

*Max R. Isrealson,* with whom were *Samuel S. Levin* and *Melvin S. Silberg* on the brief, for the appellants.

*Max Sokol,* with whom were *Melvin J. Sykes, Deeley K. Nice, Emanuel H. Horn* and *Dickerson, Nice & Sokol* on the brief, for the appellees

HAMMOND, J., delivered the opinion of the Court.

Melvin Olney, a three-year old boy, and Howard Olney, his father, sued in separate actions the Checket Columbia Company, owner of an automobile, and Arthur C. Carmichael, its employee and the driver, for damages resulting to them, respectively, from an accident in which the automobile struck the child. At the conclusion of the plaintiffs' case, (the two cases were tried together), the Court instructed the jury, on motion of the defendants, that there was no evidence of any primary negligence and that they must find a verdict in favor of the defendant in each case. From the judgment which followed, the plaintiffs appealed to this Court.

As we must, in passing on an instructed verdict for the defendant, we have resolved all conflicts in the evidence of the appellants and assumed the truth of all evidence and all inferences which may naturally and legitimately be deduced from that evidence, which tend to support their right to recovery. We conclude that they have failed to prove any negligent act or omission

of the appellees responsible for injury to either appellant. This being so, the Court below was correct in holding that on appellants' own showing there was no rational ground upon which a verdict for them could be based. *Eisenhower v. Baltimore Transit Co.*, 190 Md. 528, 59 A. 2d 313.

The accident occurred on March 5, 1951 about 12:50 P.M. on a bright, clear day on Aisquith Street south of Low Street in Baltimore City. The automobile was being driven south on Aisquith Street at a speed of approximately twenty miles an hour about two feet east of a row of parked cars along the west side of Aisquith Street. The child was struck by the right front of the car. The driver did not see the child before the impact and stopped the car immediately after he felt the bump. When he got out, he saw the child lying about a foot from the right rear of the car.

Edward Madden, the passenger sitting in the front seat, gave a statement to the investigating Police Officer, which was read in evidence by the Officer, called as plaintiffs' witness, in which he said: "We made a right turn to go south on Aisquith Street and had went just a short distance when I saw the child run out into the street after a ball. He ran from between parked cars and we were about ten feet from him. I yelled to Mike, the driver, to look out, because I didn't think Mike could possibly see him. Mike was not going fast at the time, about twenty miles an hour. The way that those cars were parked I don't see how Mike could have seen the boy".

The appellants' theory of the negligence of the appellees is that the child did not come from between the parked cars on the west side of Aisquith Street, but rather, crossed from the east to the west as the last of a group of children, who made that crossing. The appellants argue that Carmichael, the driver of the car, had an unobstructed view sixty or seventy feet ahead and about ninety feet to the east side of Aisquith Street, which was to his left as he drove south. They say that

as a matter of law, it cannot be said that the appellees were free from negligence, (a) in failing to see the children playing there, and, (b) being thus chargeable with awareness of their presence, not to realize and guard against their well known habit of starting, turning, or stopping suddenly. In support of this argument, they rely on *2 Restatement of the Law of Torts*, Chapter 12, Section 290, page 781; *Stafford v. Zake*, 179 Md. 460, 20 A. 2d 144; and *Miller v. Graff*, 196 Md. 609, 617, 78 A. 2d 220, 223, where the Court said: "Motorists should bear in mind that young children lack judgment and caution, and that in crossing a street they are often reckless by adult standards. Such carelessness of children should serve as a warning to motorists to reduce their speed and to use caution whenever they see children in the street."

There can be no quarrel with the validity of the theory of the appellants. The difficulty is that, striving as valiantly as they did, they were unable to produce any evidence which showed, or permitted any rational inference, that the accident happened as they suggest that it did. They produced two witnesses in an effort to support their position. The first witness, Rogers Leverette, had been sitting on a bench in Jefferson Court, across the street from where the accident happened, watching his children play. He had gotten up and walked to one of the entrances to the yard of this housing project. He had seen the children playing, then he realized that they had disappeared. A few minutes later, he heard the screech of brakes, heard the bump, and looked and saw the child lying at the rear of the car. He remembered the children playing around there, that Melvin Olney was among them, and that then they disappeared. The appellants at this point told the Court that they had been taken by surprise by the testimony of the witness, and that they had taken a conflicting statement from him before the trial. There was then read to him questions and answers from the statement. The witness agreed that he had said: "All the children except one

got across the street safely, . . ." and that "The last one was Melvin Olney and that he got within a step or two to a point between two cars parked on the west side of Aisquith Street". The witness further agreed that he had said in the statement that the child was three or four feet from where he was lying after the accident, "when I saw an automobile that was coming south on Aisquith Street. My attention was called to the automobile when I heard a loud screech. . ." The witness at no time said he saw the automobile strike the child. The Court ruled that the appellants could ask the witness whether what he said in the statement was true or what he said on the stand was true. A qualification by the Court was that he could not be asked whether the entire statement was true but must be asked separately as to each conflicting statement and appellants' counsel agreed that this was right. After this ruling, the witness was never asked whether the statements which have been quoted above were or were not true. If, however, we assume for the purpose of the case, that he would have testified that they were true, if asked, later, in his testimony, Leverette said that what he had said from the stand before the statement was produced was the truth, the whole truth, and nothing but the truth, and that "I wasn't watching the boy in the accident before I heard the screech of brakes". The witness said further that he had not seen anyone in the street at the time of the accident. When he was asked on redirect by the appellants, he said that he didn't remember when the children left the entrance, but about five minutes or perhaps less, afterwards, he heard the screech of the brakes. He was asked again if he had seen the automobile before the accident and he said definitely that he had not. At one point in the effort of appellants to examine Leverette on redirect, the Court below observed: "Well, you mean he might give us *another* version?"

We find that the testimony of Leverette is too inconclusive, uncertain, vague, and contradictory to furnish

a rational basis for a finding of negligence. As Judge Markell, for the Court, said in *Bond v. Forthuber,* 198 Md. 476, 483-484, 84 A. 2d 886, 889: ". . . If the testimony of one witness at the trial is legally sufficient, it matters not that this testimony may be contradicted by ten witnesses for defendant, or even that it may be in conflict with statements before the trial, or testimony in a previous trial or other legal proceeding, of the same witness. *Baltimore Transit Co. v. State, for use of Castranda,* 194 Md. 421, 433, 71 A. 2d 442, 446-447; *Foble v. Knefely,* 176 Md. 474, 484-485, 6 A. 2d 48, 122 A. L. R. 831, and cases cited. But if any witness's testimony is itself so contradictory that it has no probative force, a jury cannot be invited to speculate about it or to select one or another contradictory statement as the basis of a verdict. *Eisenhower v. Baltimore Transit Co.,* 190 Md. 528, 537-538, 59 A. 2d 313, and cases cited. Testimony at the trial which is later corrected by the witness cannot go to the jury as against the later correction.' *Kaufman v. Baltimore Transit Co.,* 197 Md. 141, 145, 78 A. 2d 464, 466." See also *Butler v. Reed-Avery Co.,* 186 Md. 686, 48 A. 2d 436; *Foble v. Knefely,* 176 Md. 474, 6 A. 2d 48, 122 A. L. R. 831; *Askin v. Long,* 176 Md. 545, 551, 6 A. 2d 246; *Oberfeld v. Eilers,* 171 Md. 332, 189 A. 203; and in *United States Fidelity & Guaranty Company v. Continental Baking Co.,* 172 Md. 24, 33, 190 A. 768, 772, where the Court said: "The first answer, that the light was changing to amber as he entered the intersection, is cancelled by his answer that it changed back at the safety zone, forty to seventy feet away. Such testimony has no probative force or evidential value. *Slacum v. Jolley,* 153 Md. 343, 351, 138 A. 244."

This is not a case where the jury is entitled to decide between testimony given at the trial and testimony given at prior trial, or between present testimony and the truth of a prior conflicting statement. It is a case, assuming, as we have, that the prior statements were in evidence at the trial, where the testimony of the witness

from the stand is in hopeless conflict and without probative force.

The second witness for the appellants was LeRoy Miles. He was walking north on the east side of Aisquith Street with a friend (the friend was not produced, nor were any of the children with whom Melvin Olney had been playing). Miles observed two children about to cross the street. He placed a hand on the shoulder of each, looking up and down to see that the street was clear, and they went across. He walked a little further, and in a second, two other boys went across after he had done the same thing, and then another little boy ran rapidly in front of him, "so fast I just moved out of his way and let him by. . ." Miles said that after the little boy passed him, he paid no more attention to him, but that he moved a couple steps up the street after that, and then: "I heard a sound and as I turned around real quick I ran across the street and that's where I seen the little boy laying out there". When he looked, the automobile was standing still. Miles did not see the automobile strike the child and he said on cross-examination that the accident happened behind him so that he had to turn and walk back. When the second pair of children went across the street, he could see all the way to Gay Street, "a great distance" as he put it, and there was no automobile on Aisquith Street coming south. He was asked whether, when the third child went across, he saw any automobile between Gay Street and where he was, coming south on Aisquith Street, and he said that he did not.

The evidence in a case is legally sufficient if it rises above speculation or conjecture, and so affords the rational basis needed for a determination that the defendant was guilty of negligence which produced the accident. *Shafer v. State*, 171 Md. 506, 509, 189 A. 273. In *Maas v. Sevick*, 179 Md. 491, 492, 20 A. 2d 159, a girl of five was struck by a truck passing along an alley in Baltimore City. As the opinion puts it: "No witness saw the truck strike the child, but she was injured, and

a charge of negligent cause in the driving is based upon estimates of her position and that of the truck just before and after the accident". The Court refused to permit the jury to pass on the question of negligence and Judge Bond said: "To permit submission of a case to a jury for its finding, there must be evidence of the cause of action beyond conjecture and speculation, not as we think this testimony is, 'of so slight and inconclusive a nature as to be wholly insufficient to be made the basis of a verdict'."

We think that the testimony in the instant case comes under the characterization of that in the *Maas* case. Undoubtedly, the child crossed from the east side to the west side of Aisquith Street, but there is no evidence to place this crossing at a time when the appellees' car was coming south on Aisquith Street. Leverette estimates that it was five minutes after the children left the east side of the street that the collision occurred. Miles' testimony showed that he had walked some distance up Aisquith Street from the time that Melvin Olney ran across in front of him, until he turned and saw the car standing still an appreciable distance behind him with the boy behind it. Miles says further that when the little boy ran across in front of him—and it was shown that Aisquith Street is but thirty-five feet wide—there was no car coming south on the street. All that can be wrung from the testimony of the appellants' witnesses, is that there was a chance or possibility, a speculative conjecture, that Melvin Olney was struck as he crossed from the east to the west side of the street, and that Carmichael, the driver of the car, had an opportunity to see him and should have stopped before striking him. This is not enough. *Hevell v. Baltimore Transit Co.*, 173 Md. 327, 334, 196 A. 103, 107. There the Court stressed the fact that there must be evidence of negligence or evidence from which negligence may be legally inferred before the case can go to the jury, and said: "this requirement is not satisfied by mere conjecture and speculation as to how the injury com-

plained of occurred. . . Nor will a scintilla of evidence or a mere surmise that there may have been negligence justify the court in permitting the case to go to the jury". *Baltimore Transit Co. v. Young,* 189 Md. 428, 436, 56 A. 2d 140; *Merchants & Miners Trans. Co. v. Hazelton,* 108 Md. 564, 567, 70 A. 413; and *Maas v. Sevick, supra.*

The action of the lower Court in withdrawing the case from the consideration of the jury was correct.

*Judgment affirmed, with costs.*