## VOSS *v.* MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL.

[No. 251, September Term, 1966.]

*Decided April 11, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Joseph G. Finnerty, Jr.,* with whom was *Hugo A. Ricciuti* on the brief for appellant.

*Vernon H. Wiesand, Assistant City Solicitor,* with whom were *Joseph Allen, City Solicitor* and *Clayton A. Dietrich, Chief Assistant Solicitor* on the brief for appellees.

HORNEY, J., delivered the opinion of the Court.

In this case, in which a firefighter, claiming incapacitation as the result of having been injured in the line of duty, applied to the Board of Trustees of the Employees' Retirement System of Baltimore City for retirement, the sole question on appeal is whether the applicant was entitled to an accidental or a disability retirement allowance.

When the board granted retirement but awarded only an ordinary disability allowance, the applicant petitioned the Baltimore City Court for a writ of mandamus to compel the board to allow him accidental retirement benefits. And when the lower court dismissed the petition for mandamus, this appeal from the order of dismissal followed.

The appellant had been an employee of the fire department for about twenty years. There is no dispute that he has a back injury and that he incurred it while on duty. The denial of accidental retirement benefits was based on the finding of the board that the injury was not the result of an accident within the meaning of the pension ordinance—subsection (5) of § 6 of Article 23 of the Baltimore City Code of 1950 as amended.

The record shows that on a day in the latter part of February in 1963, the appellant and two other firemen, pursuant to an order of their lieutenant to remove snow from the driveway in front of the engine house, proceeded, as was the custom, to push the snow to the edge of the driveway and then toss it over a hedge onto an adjoining lawn. The scoops and shovels used were the usual ones. And the lifting and tossing

of snow was performed in the usual manner. While there was evidence to the effect that the snow was "very wet" and "heavier" than usual, it appears that the basis for such evidence was in conflict with other evidence in the record.[1] As the appellant was lifting snow from a pile about twenty inches high he injured his back. He was unable to continue working and was relieved from duty. A medical examination disclosed a herniated intervertebral disc which necessitated surgery.

It is clear from the testimony of the appellant at the two hearings before the retirement board that he had neither slipped nor fallen. And while part of his testimony as to what happened was not deviatory, other parts of it are obviously inconsistent and conflicting. For instance, at the first hearing, he testified in part as follows:

"Q. Will you explain what happened immediately before you felt this pain in your back? Just what were you doing and what happened?

A. I was shoveling the snow over the hedge.

\* \* \*

Q. Now, was there anything unusual that happened while you were shoveling this particular amount of snow? Did you slip or fall or anything like that?

A. Not a thing. Not a thing. The only thing that I've been trying to figure out it just must have been a little too much on the shovel. You know, we use a pretty good size shovel, it's not one of those small things and we have really big scoops and I was shoveling and that was it.

Q. Was there more on the shovel at that time than other times?

---

1. When the appellant was asked to explain why the snow was different from snows handled by him on prior occasions, the only explanation he gave was "the way it was being removed" — the other two men he was working with were using large scoops to clear the driveway. There was, however, other evidence to the effect that all snows were removed by dividing the driveway in half and then pushing the snow over to the sides and shoveling it over the hedge rather than push it into the narrow street only to have it thrown back on the driveway by a snow plow.

A. I couldn't—I couldn't say that * * *. Actually, you don't measure that stuff. You pick up some. Sometimes there's a little bit and sometimes there's a whole lot.

* * *

Q. Was there any difference at all between what was happening at that time than at previous times when you shoveled snow?

A. There was no difference. There was no difference. We just worked the same way."

Whereas at the second hearing, he testified in part as follows:

"Q. Now, were you doing any of that scooping?

A. At first I was.

Q. Now, just before you were injured what were you doing? Were you scooping or were you shoveling?

A. I was shoveling it over the hedge at that time. This pile was getting large, around 20 inches or so, you know—

* * *

Q. Now, were you shoveling from that mound of snow?

A. I was working off of that mound of snow.

* * *

Q. Now, will you tell the board exactly what happened immediately preceding the injury to your back? * * *?

A. First we have a good solid shovel, a short hand[led] shovel, very wide. In fact, it is called a scoop. It is a large shovel. It holds a good amount, a very good amount and we use that on regular outside work. * * *. And I took that shovel in there and I had to come up and it give me a jolt or something. I had put a little extra effort on it to get it over the hedge.

Q. Were you shoveling from the bottom of the mound along the concrete?

A. I was shoveling along the concrete, yes sir.

* * *

Q. But you did not slip or fall?

A. No, sir, I did not slip or fall.

Q. Why didn't you tell the board the details of this incident when you [were asked at the first hearing]? Why didn't you go into greater detail?

A. Well, the question just wasn't put to me that away.

\* \* \*

Q. But you do now actually testify that at the time you picked up this large bite of snow you felt a jerk or jolt and then immediately you felt pain?

A. Absolutely and we talked about this thing. I recall that incident.

Q. And this was immediately, right after that you felt the pain?

A. That was the worst shovel full I had picked up and something snapped I guess.

Q. And did you testify that you had to exert a little more effort to get this particular shovel full over? Over the hedge?

A. What?

Q. I said did you exert yourself quite a bit?

A. I did exert myself."

And on cross-examination, he testified—

"Q. Mr. Voss, isn't it a fact, however, that this is the manner in which the snow is always removed from the driveway at this engine house?

A. That is right, sir.

\* \* \*

Q. Is it also a fact, Mr. Voss, that this particular type of shovel or scoop \* \* \* is one that is always used for the shoveling of snow?

A. That is correct. The large scoops get most of it up first over near the hedge and then [we] use large shovels. We carry them \* \* \* and use [them] to get the load over the hedge onto the lawn. \* \* \*."

On the basis of this testimony, and the other evidence in

the record, the board, finding that the injury incurred by the appellant was not the result of an unusual strain or exertion or of an unusual condition of employment, denied the appellant the accidental retirement allowance he had applied for. Since we think the decision of the board was correct, we must affirm the refusal of the lower court to issue a writ of mandamus.

On appeal the appellant, claiming that his disability was due to an accidental injury arising from unusual strain and unusual working conditions, contends that the refusal of the board to award him an accidental retirement allowance was arbitrary. The appellee, on the other hand, contends that the decision of the board was correct and should not be disturbed. We agree with the appellee.

In the first place, as we read the record, the testimony of the appellant is so inconsistent and contradictory as to make it doubtful whether it should be the basis of a legal conclusion. When he was asked at the first hearing whether there was "any difference at all between what happened at that time [meaning the day he was injured] than at previous times when you shoveled snow," he stated there was no difference and added "we just work the same way." Although the appellant also said at the same hearing that "not a thing" unusual had happened while he was tossing snow over the hedge, he stated at the second hearing that he had "put a little extra effort to get [the snow] over the hedge" and that as a result of picking up a "large bite of snow" he felt "a jerk or jolt" and then "pain" in his back. In reply to a question, at the first hearing, as to whether there was more snow on the shovel "at that time than other times" he replied he "couldn't say," yet, at the second hearing, in reply to a similar question he stated it was the "worst shovel full" he had picked up that day. At the second hearing when asked if he was *shoveling from* the mound of snow, he replied that he was *working off* of the mound, but later when he was asked at the same hearing if he was shoveling from "the bottom of the mound along the concrete," he said he was. And although the appellant had said at the first hearing that he had used a "little extra effort" to toss the snow over the hedge, such effort as he had used had grown to "quite a bit" of exertion at the time of the second

hearing. Much of the anticipated effect of the testimony of the appellant at the second hearing was lost, however, when, on cross-examination, he admitted that "snow [was] always removed from the driveway" in the same manner it was removed on this occasion and that the type of shovel or scoop used at that time was "always used for the shoveling of snow." There is a line of cases, ranging from *Slacum v. Jolley,* 153 Md. 343, 138 Atl. 244 (1927) to *Olney v. Carmichael,* 202 Md. 226, 96 A. 2d 37 (1953), which hold that when a witness says in one breath that a thing is so, and in the next breath that it is not so, his testimony is "too inconclusive, contradictory, and uncertain to be the basis of a legal conclusion." [2] See also *Gray v. Department of Correction,* 230 Md. 508, 187 A. 2d 860 (1963) ; *Maryland Chemical Co. v. Monn,* 241 Md. 127, 215 A. 2d 731 (1966) ; *Plitt v. Greenberg,* 242 Md. 359, 219 A. 2d 237 (1966).

But even if the most favorable parts of the testimony, such as the statements that the appellant was shoveling from the bottom of the mound of snow rather than the top; that the last shovelful he attempted to toss over the hedge was the fullest he had lifted that day; and that he had exerted a little more effort to get the last shovelful over the hedge just before he felt a jerk or jolt followed by the pain in his back, are accepted as the only probative facts relating to the occurrence of the injury, the result would be the same. For when these facts are considered, as they must be, with the further facts that the appellant had not slipped or fallen; that the work he had done was no different from that he had always done; that the snow was removed in the same manner it had been moved on prior occasions; and that he and his coworkers had used the same scoops and shovels they had always used, we think it is clear that the disability the appellant incurred was *ordinary* rather than *accidental.*

Since there is little if any difference as to what constitutes

---

2. Other cases in this line include Oberfeld v. Eilers, 171 Md. 332; U. S. F. & G. Co. v. Continental Baking Co., 172 Md. 24; Askin v. Long, 176 Md. 545; Butler v. Reed-Avery Co., 186 Md. 686; and Eisenhower v. Baltimore Transit Co., 190 Md. 528.

an accidental injury in pension and compensation cases, the legal principle involved is often interchangeably applied. In both, the injury, to be accidental, must result from some unusual strain or exertion or some unusual condition. *Vaughan v. M. & C. C. of Baltimore,* 229 Md. 547, 184 A. 2d 842 (1962) ; *Adams v. Board of Trustees,* 215 Md. 188, 137 A. 2d 151 (1957). And if the resulting disability is ordinary instead of accidental, as is the case here, a pension is not allowable. In the *Vaughan* case we said (at p. 550) that in this state "the phrase 'accidental injury' does not include unexpected results not produced by accidental causes."

We think that *Vaughan, supra,* not *Golombieski, infra,* is controlling here. In *Vaughan,* where the only testimony was to the effect that it was not unusual for firemen to shovel snow two or three times in one night and it was not shown that the coronary infarction sustained by the appellant was the result of a fall or slip, it was held that the decision of the board that his injury was not the result of an accident was supported by the evidence and was not arbitrary. *Here,* where there also had been no slip or fall and it was customary to remove the snow in the same manner and with the same tools as was done on this occasion, there was evidence that the appellant had exerted himself somewhat more than usual, but there was no showing that the herniated disc he sustained was induced either by unexpected strain or overexertion or by extraordinary conditions. We hold therefore that the injury the appellant received was not accidental. The most that can be said is that the injury was an unexpected result of a normal activity.

The appellant relies on *Bethlehem Steel Co. v. Golombieski,* 231 Md. 124, 188 A. 2d 923 (1963), to support his contention that the injury he received was accidental, but that case is distinguishable on the facts from the present case. In *Golombieski,* where a mechanical repairman was injured while he was engaged in repairing a coke oven line in a department he had never worked in before, and there was evidence that the conditions of his work were unusual (due to his having to work on a trestle in a crouched position) and that he had to exert unusual pressure to accomplish his assigned task, we held that the unusual exertion under the unusual conditions was not only

accidental but was in fact the cause of the ruptured aneurysm he sustained. The appellant in quoting only that part of a sentence in the opinion (on p. 131) reading—

> "but because the rusted and corroded union would not turn, the employee had pulled harder on the wrenches than he had ever previously attempted to do and passed out as a result of the unusual exertion he had then applied,"

to support his contention, omitted the first part of the sentence reading—

> "Not only was the employee required to work under unusual conditions he had never experienced before as a mechanical repairman,"

which stated the facts that distinguishes *Golombieski* from the present case. *Here,* there was no evidence that the appellant was required to unexpectedly strain or exert himself while helping remove the snow in the same manner and with the same tools as prior snows had always been moved.

Since most of the other cases, in which recovery was allowed [3] or disallowed,[4] cited by the parties in their respective briefs or oral arguments, were discussed or referred to either in *Vaughan* or *Golombieski,* or both, it would serve no useful purpose to repeat here what was said in those cases.

> *Order affirmed; appellant to pay the costs.*

---

3. Cases holding that the evidence indicated either an unusual strain or exertion or an unusual condition of employment would include [Standard] Gas Equipment Corp. v. Baldwin, 152 Md. 321; Schemmel v. Gatch & Sons, 164 Md. 671; Adams v. Board of Trustees, 215 Md. 188; Plastic Assembled Products v. Benkoe, 224 Md. 256; and Commercial Transfer Co. v. Quasny, 245 Md. 572.

4. Cases holding that the injuries were not accidental would include Miskowiak v. Bethlehem Steel Co., 156 Md. 690; Atlantic Coast Shipping Co. v. Stasiak, 158 Md. 349; Heil v. Linck, 170 Md. 640; Jackson v. Ferree, 173 Md. 400; Kelly-Springfield Tire Co. v. Daniels, 199 Md. 156; Caled Products Co. v. Sausser, 199 Md. 514; Rieger v. W. S. S. C., 211 Md. 214; Eastern Shore P. S. Co. v. Young, 218 Md. 338, and Mize v. Beauchamp Associates, 245 Md. 583.