## OWEN MAXIE RAY ET AL. v. MARGARET JANE BASSIL

[No. 141, September Term, 1975.]

*Decided March 4, 1976.*

The cause was argued before POWERS, DAVIDSON and MOORE, JJ.

*Patrick A. O'Doherty* for appellant Owen Maxie Ray.

*William S. Barton,* with whom were *George L. Huber, Jr.,* and *Arnold Beauchemin & Huber, P.A.* on the brief, for appellant North Carolina Mutual Life Insurance Company.

*Harry Goldman, Jr.,* for appellee.

POWERS, J., delivered the opinion of the Court.

In considering a directed verdict motion in a negligence case, the standard laid down by the cases for measuring the sufficiency of evidence requires the court to reject any evidence which is not credible.

The standard was stated by the Court of Appeals in *Curley v. General Valet Service,* 270 Md. 248, 264, 311 A. 2d 231 (1973), to be:

> " * * * that before it can be determined as a matter of law that one has not been guilty of negligence, the truth of all the *credible* evidence tending to sustain the claim of negligence must be assumed and all favorable inferences of fact fairly deducible therefrom tending to establish negligence drawn; that 'Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury;' that the rule requires submission of the case to the jury if there be any evidence, however slight, legally sufficient as tending to prove negligence, the weight and value of such evidence being left to the jury; that to meet the test of legal sufficiency, the party having the burden of proving another party guilty of negligence cannot sustain this burden 'by offering a mere scintilla of evidence amounting to no more than a surmise, possibility, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value.'" (Emphasis supplied).

We expressed the rule in general but comprehensive form

in *Buchanan v. Galliher*, 11 Md. App. 83, 272 A. 2d 814, cert. denied, 261 Md. 722 (1971), when we said, at 87:

"When a trial court is called upon by a motion for a directed verdict to rule upon the legal sufficiency of the evidence to require submission of any issue to a jury, the court must assume the truth of all *credible* evidence on that issue and of all inferences fairly deducible therefrom, and consider them in the light most favorable to the party against whom the motion is made, and if such evidence and inferences lead to conclusions from which reasonable minds could not differ, then the issue is one of law for the court and not one of fact for the jury." (Emphasis supplied).

It is to the requirement that in order to enter the equation of sufficiency, evidence must be credible,[1] that we turn our attention. It has often been held by the Court of Appeals that the testimony given by a witness at a trial is " * * * too inconclusive, uncertain, vague, and contradictory to furnish a rational basis for a finding of negligence." *Olney v. Carmichael*, 202 Md. 226, 231-32, 96 A. 2d 37 (1953). The cases cited and quoted there include *Bond v. Forthuber*, 198 Md. 476, 84 A. 2d 886 (1951); *Kaufman v. Baltimore Transit Co.*, 197 Md. 141, 78 A. 2d 464 (1951); *Eisenhower v. Baltimore Transit Co.*, 190 Md. 528, 59 A. 2d 313 (1948); *U.S.F. & G. Co. v. Continental Baking Co.*, 172 Md. 24, 190 A. 768 (1937); and *Slacum v. Jolley*, 153 Md. 343, 138 A. 244 (1927).

---

1. The Century Dictionary and Cyclopedia (1897) gives two principal definitions of the adjective "credible". They are:

1. Worthy of credit or belief, because of known or obvious veracity, integrity, or competence: applied to persons.
2. Capable of being credited or believed, because involving no contradiction, absurdity, or impossibility; believable: applied to things.

Webster's New International Dictionary, Second Edition (1950) defines "incredible":

Not credible; surpassing belief; too extraordinary and improbable to admit of belief.

In *Olney v. Carmichael, supra,* the Court, after discussing the self-contradiction by a witness at the trial, said, at 232-33:

"This is not a case where the jury is entitled to decide between testimony given at the trial and testimony given at prior trial, or between present testimony and the truth of a prior conflicting statement. It is a case, assuming, as we have, that the prior statements were in evidence at the trial, where the testimony of the witness from the stand is in hopeless conflict and without probative force."

The Court went on to discuss the question of sufficiency of evidence, and said, at 233-34:

"The evidence in a case is legally sufficient if it rises above speculation or conjecture, and so affords the rational basis needed for a determination that the defendant was guilty of negligence which produced the accident. *Shafer v. State,* 171 Md. 506, 509, 189 A. 273. In *Maas v. Sevick,* 179 Md. 491, 492, 20 A. 2d 159, a girl of five was struck by a truck passing along an alley in Baltimore City. As the opinion puts it: 'No witness saw the truck strike the child, but she was injured, and a charge of negligent cause in the driving is based upon estimates of her position and that of the truck just before and after the accident.' The Court refused to permit the jury to pass on the question of negligence and Judge Bond said: 'To permit submission of a case to a jury for its finding, there must be evidence of the cause of action beyond conjecture and speculation, not as we think this testimony is, "of so slight and inconclusive a nature as to be wholly insufficient to be made the basis of a verdict".' "

In *Eisenhower v. Baltimore Transit Co., supra,* the Court of Appeals said, at 537-38:

"We have quoted the testimony of this witness at

such length so that we might properly evaluate its probative force. The various statements of the witness as to the position of the street car at the time the light turned green in the witness' favor are clearly contradictory. It was said in the case of *Slacum v. Jolley*, 153 Md. 343, at page 351, 138 A. 244, at page 248, that 'when a witness says in one breath that a thing is so, and in the next breath that it is not so, his testimony is too inconclusive, contradictory, and uncertain to be the basis of a legal conclusion.' This rule was applied in the cases of *Oberfeld v. Eilers*, 171 Md. 332, 189 A. 203, and *Askin v. Long*, 176 Md. 545, 6 A. 2d 246. In applying the rule in the case of *United States Fidelity & Guaranty Co. v. Continental Baking Co.*, 172 Md. 24, at page 33, 190 A. 768, at page 772, the Court says: 'The first answer that the light was changing to amber as he entered the intersection is cancelled by his answer that it changed back at the safety zone, 40 to 70 feet away. Such testimony has no probative force or evidential value.' The last application of the rule by this Court was in the case of *Butler v. Reed-Avery Co.*, 186 Md. 686, 48 A. 2d 436, where many of the cases are reviewed. Tested in the light of these authorities, it is our conclusion that the testimony of the witness, Metcalf, is too vague, indefinite and speculative to constitute a basis from which the jury could arrive at a rational conclusion."

The cases we have just cited and discussed have involved a judicial finding that certain evidence is not credible by reason of self-contradiction at the trial by the witness who is the source of the evidence. But self-contradiction is not the only reason for holding that a part or all of the evidence given by a particular witness is not credible. His evidence taken as a whole may contain inconsistencies short of express self-contradiction; it may show that the witness himself was engaging in speculation and conjecture; it may

demonstrate that it was impossible for him to see what he says he saw; it may consist of adjectival descriptions which are subjective and not factual; it may be the witness's own inference from other facts when more than one inference may be drawn; or it may be direct and purport to be factual, but physically or legally impossible because of other conceded or incontrovertible facts. When it is any of these, it is the duty of the court to determine whether the evidence exceeds the limits of credibility. If it does, the court will not permit the jury to consider it.

After distinguishing direct evidence of a fact from circumstantial evidence which permits more than one rational inference, the Court of Appeals, in *Short v. Wells*, 249 Md. 491, 240 A. 2d 224 (1968), said, at 496-97:

> "But that is not the case here where there is more than conflicting inferences. Here there is *direct* as well as circumstantial evidence of negligence. It was therefore a question of fact for the jury and not mere speculation or conjecture as to what to infer. *Bavis v. Fonte*, 241 Md. 123, 215 A. 2d 739 (1966); *Ferguson v. Wootten*, 240 Md. 186, 213 A. 2d 498 (1965). This is not to say that in every case where the plaintiff has introduced some direct evidence of negligence, it should go to the jury. If the direct evidence approaches the outer limit of credibility or, if in some situations, the direct evidence is merely adjectival, it would be insufficient. See *Harper and James, op. cit, supra*, § 19.2; *Miller v. Robinson*, 241 Md. 335, 216 A. 2d 743 (1966)."

See 2 Harper and James, *The Law of Torts*, § 19.2 (1956), where the authors, in discussing direct evidence with respect to its sufficiency to prove a fact, point out that, " * * * here as elsewhere the courts retain the power to set the limits of what is credible evidence.", and they refer further to " * * * the power generally retained by courts to set the outer limits of credibility * * * ."

This Court held in *Tippett v. Quade*, 19 Md. App. 49, 309 A. 2d 481 (1973) that certain evidence in the case was not

credible under the circumstances, although not directly contradicted by the same witness. We excluded it from a determination of sufficiency, as against a motion for a directed verdict.

## The Present Case And The Issues

On 9 May 1970, at about 4:40 P.M., Margaret Jane Bassil was walking from west to east across Barclay Street, in Baltimore. Owen Maxie Ray was driving his automobile south on Barclay. The automobile hit Miss Bassil and caused serious injuries. Miss Bassil filed suit in the Baltimore City Court against Mr. Ray as well as his employer, North Carolina Mutual Life Insurance Company, alleging that Ray was negligent, and that he was on the business of his employer at the time of the accident. The case was tried before Judge Albert L. Sklar and a jury in January, 1975. The jury returned a verdict in favor of the plaintiff against both defendants. After motions were heard and denied in February, 1975, judgment was entered on the verdicts, and both defendants appealed.

Appellants contend here that their motions for a directed verdict should have been granted because, (a) the evidence was not legally sufficient to permit the jury to find that Mr. Ray was negligent, and (b) the evidence showed that as a matter of law the plaintiff was guilty of negligence which directly caused or contributed to her injuries. Mr. Ray also contends that the court erred in instructing the jury that, "From the fact that Mr. Ray did not testify concerning speed, you may infer that if he had taken the stand his testimony would have been unfavorable to him in that regard."

Appellant North Carolina Mutual Life Insurance Company contends additionally that a verdict should have been directed in its favor because the evidence failed to establish a master-servant relationship between it and Ray.

## The Evidence Of The Happening Of The Accident

Miss Bassil, in her middle fifties, had suffered a stroke,

unrelated to the accident, about three years before the trial. She was present at the trial, but did not testify. Both sides agreed that she was not competent to do so. Her sister, Mrs. Bernice Dent, described her physical condition before and after the accident. She said that Miss Bassil had been half blind and hard of hearing "ever since I can remember", but that she had no previous trouble with her legs or with walking. After the accident and before the stroke Miss Bassil, when walking, rocked from side to side, and sometimes lost her balance.

There was evidence that at the scene and at the hospital, Miss Bassil smelled of alcohol, but was not toxic. A blood sample taken at the hospital between two and three hours after the accident showed the presence of .085 milligrams of alcohol, below the .150 level of intoxication.

Appellee's evidence relating to the happening of the accident is found principally in the testimony of William Logan. Albert Coston also testified, and appellee introduced exhibits consisting of a plat and three photographs of the area, and answers given by appellant Ray to questions propounded to him in the course of pretrial discovery. Mrs. Patsy Jackson and Officer Harry Sizelove, the investigating policeman, were called by the appellants to testify. Appellants also offered evidence for the purpose of impeaching the testimony of Mr. Logan. We do not, of course, consider the evidence which sought to impeach a witness, but we do consider the whole of the testimony given by that witness at the trial.

The plat, drawn to scale, shows Barclay Street, which runs north and south, and two intersecting east-west streets, 23rd Street, 31 feet from curb to curb and 65 feet from building to building, and 22 1/2 Street, which has no curbs, 22 feet from building to building. Barclay Street is projected on the plat north of 23rd Street and south of 22 1/2 Street. Mr. Logan testified that he operated a store at the northwest corner of 23rd and Barclay, and was standing in front of the store talking to Mr. Coston and a woman named Virginia. According to the plat, he was about 270 feet north of the intersection of 22 1/2 and Barclay. Evidence given by Mr.

Logan, which appellee says supports a finding that Ray was negligent, was that when the car passed where Mr. Logan was standing, it was going fast, approximately 48 to 55 miles per hour, and that the car struck Miss Bassil in the crosswalk of the intersection of Barclay and 22 $^1$/$_2$ Streets. Mr. Logan saw something in the air over the top of the car. He did not know what it was, but went down to see. It was Miss Bassil.

Mr. Logan marked on the plat a circle in blue, indicating the place where Mr. Ray's car was standing when Mr. Logan reached the scene. The car was on the west, or southbound side of Barclay Street, and was completely within the area formed by projections of the building lines of 22 $^1$/$_2$ Street.

Mr. Logan did indeed testify several times that the lady was in the crosswalk when she was hit by the car. He also testified that he "never saw the lady in the street before she was struck", and when he was asked:

> "Is it fair to say, sir, that what you did was, you heard the screeching of brakes in that area and when you looked the first time, you saw the plaintiff, she was in the air?",

he responded:

> "That is exactly what I said."

With respect to speed, Mr. Logan was asked:

> "What I am saying is, you have testified here that you thought it was going at an excessive rate of speed when it passed you and you assumed that it was going at an excessive rate of speed down the next block because the lady's body went up in the air, is that correct?",

and answered:

> "Yeah, yeah."

There was uncontroverted evidence that Miss Bassil was lying in the street directly in front of Mr. Ray's car at a

distance, as marked on the plat, which appears to be about five feet. The front of the hood on the car was damaged. The car left skid marks, but there was no evidence of their length. Barclay Street was wide enough for cars to be parked at the curb on each side and still leave a lane for southbound and a lane for northbound travel. Cars were parked at the curb on the west side.

Appellee placed in evidence excerpts from pretrial discovery in which Mr. Ray had stated that he did not see Miss Bassil until the instant he struck her. Mr. Ray told the police officer at the scene that Miss Bassil stepped from behind a parked vehicle, when he was 25 feet from the intersection, and that he put on his brakes but that he struck her, throwing her on the hood of his vehicle.

A defense witness, Mrs. Patsy Jackson, testified that she was standing on the west sidewalk of Barclay Street. She marked her location on the plat. It was about 120 feet from 22 1/2 Street. She said she saw Miss Bassil, carrying a bag containing some bottles, walk out of 22 1/2 Street to Barclay Street. She said Miss Bassil paused, then proceeded, without looking, beyond the line of parked cars into Barclay Street and into the path of Mr. Ray's car. Mrs. Jackson marked on the plat the course she saw Miss Bassil take. The line was along the imaginary center of 22 1/2 Street and projected into the traveled southbound lane of Barclay Street.

### There Was Not Sufficient Credible Evidence of Primary Negligence

We have carefully searched the testimony of Mr. Logan for credible evidence of facts which, with inferences of fact fairly deducible therefrom, could lead reasonable minds to conclude that Mr. Ray was negligent in the operation of his automobile, and that such negligence was a proximate cause of Miss Bassil's injuries.

Mr. Logan's estimate of speed in miles per hour at a point 270 feet away from the accident would not be enough to show that the same speed was maintained, or, in any event, that speed, whatever it may have been, was a proximate

cause of the injury. The Court of Appeals said in *Spence v. Wiles*, 255 Md. 98, 257 A. 2d 164 (1969), at 105:

"To show merely excessive speed is ordinarily not enough to support an inference of negligence unless there is some further showing that this excessive speed is a direct and proximate cause of the injury."

The testimony of Mr. Coston adds nothing. He gave an adjectival description of the speed of the car as it went by where he was standing, 270 feet away, as "fast". He said it caused him to exclaim "wow". He went to the scene after the accident happened. He marked on the plat where Miss Bassil was lying in the street.

No evidence of negligence is to be found in the asserted conflict in the pretrial statements of Mr. Ray: that he did not see Miss Bassil until he struck her; and that when he saw her it was too late to avoid striking her.

We regard the key to the sufficiency of the evidence in this case to be Mr. Logan's testimony that Miss Bassil was in a crosswalk when she was struck. The term "Crosswalk" is defined in Code, Art. 66 ½, § 1-117, which says:

"Crosswalk means,
(1) Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other marking on the surface;
(2) That portion of a roadway ordinarily included within the prolongation or connection of the lateral lines of sidewalks at intersections."

Section 1-185 defines sidewalk. It says:

"Sidewalk means that portion of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines, intended for use of pedestrians."

The Court of Appeals in *Harris v. Bowie*, 249 Md. 465, 240 A. 2d 242 (1968), said, at 468:

"From these definitions it will be seen that if a crosswalk is not indicated by lines or markings on

the roadway that its existence is dependent on the presence of sidewalks, the prolongation of which would form the crosswalk. It is not necessary that the walkway be paved, *Lipphard v. Hanes, Admr'x,* 232 Md. 405, 194 A. 2d 93, but it is necessary that there be an area, apart from the 'roadway', that is intended for pedestrian use."

The photographs of 22 1/2 Street show that the pavement extends from building to building, with no sidewalks, and with no space between the lateral lines of the roadway and the adjacent property lines. There is no visually discernible crosswalk indicated by lines or other marking on the surface of Barclay Street. There are no sidewalks in 22 1/2 Street which could be prolonged across Barclay Street. The sidewalk on the west side of Barclay Street extends approximately three feet south of the building on the north side of 22 1/2 Street, making the vehicular entrance onto Barclay Street somewhat less than the full width of 22 1/2 Street. That extension of the Barclay Street sidewalk cannot be considered as a sidewalk in 22 1/2 Street.

We hold that as a matter of law there was no crosswalk in Barclay Street at or near 22 1/2 Street. Mr. Logan's testimony that Miss Bassil was in the crosswalk when she was hit must be rejected as not credible because it was legally impossible. It is not necessary to decide whether we find it not credible for other reasons.

We hold that the evidence was not legally sufficient to support a finding by the jury that Mr. Ray was negligent. The motion for a directed verdict on that ground should have been granted. Since we also conclude that the alternate ground of the motion, contributory negligence as a matter of law, was well taken, we shall discuss that aspect of the case.

### Contributory Negligence

The only witness who observed what Miss Bassil did before the accident was Mrs. Jackson. She testified, on direct examination:

"I saw the woman come out of 22nd, 22 1/2, which is

a small street, and she paused for a minute. Then she started crossing the street. That is when Mr. Ray hit her."

On cross examination the transcript records:

"Q Yes, before the car hit the lady, did you hear any noise of any kind, coming from the automobile of any kind?

A No, how could that be possible?

Q You heard neither blowing of the horn or skidding of brakes, did you, skidding of wheels, did you?

A Of course, he blew the horn and he tried to put on his brakes because there was skid marks on the street, but I didn't measure them. I don't know.

Q You say he blew the horn?

A Yes, he did.

Q If he were to testify that he never saw the lady until he struck her, it would still be your testimony that he blew the horn, is that right?

A Look, it was no way possible for her — she was standing behind the parked car when he was coming down the street. She wasn't looking and darted right out."

There was simply no other evidence to show directly or by inference, Miss Bassil's movements before the accident. The presumption, or inference, that a pedestrian exercises due care for his own safety, referred to in *Gresham v. Comm. of Motor Vehicles*, 256 Md. 500, 260 A. 2d 649 (1970), *Nizer v. Phelps*, 252 Md. 185, 249 A. 2d 112 (1969), and other cases, does not survive the countervailing direct evidence of negligence on the part of Miss Bassil. The law requires no further discussion. See *Nizer v. Phelps, supra; Harris v. Bowie*, 249 Md. 465, 240 A. 2d 242 (1968); *Lewis v. Hammond*, 247 Md. 297, 231 A. 2d 32 (1967); and *Brown v. Rogers*, 19 Md. App. 562, 313 A. 2d 547 (1974).

We hold that the evidence showed as a matter of law that Miss Bassil caused or contributed to her injury by her own

negligence, and that a verdict should have been directed in favor of the appellants.

The conclusions we have reached make it unnecessary, and indeed superfluous, that we discuss the other issues raised.

*Judgment reversed.*
*Appellee to pay costs.*