WASHINGTON SUBURBAN SANITARY
COMMISSION *v.* MUSGROVE ET AL.

[No. 22, October Term, 1953.]

232

*Decided November 12, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Arthur C. Keefer*, with whom were *Chester F. Naumowicz, Jr.*, and *Walter W. Dawson* on the brief, for the appellant.

*H. Algire McFaul*, with whom was *Ralph G. Shure* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from judgments rendered in favor of the appellees, Lillian J. Musgrove and James B. Musgrove, her husband, for damages as a result of a fall by Lillian J. Musgrove.

The single question before us is whether appellant's, defendant's, motion for a directed verdict, filed at the conclusion of all the testimony, should have been granted.

The declaration filed against the appellant, Washington Suburban Sanitary Commission, and Joseph L. Tillson and wife alleged, for the purposes of this case, substantially that the appellant owned a water meter located in the sidewalk on the north side of Thayer Avenue in Silver Spring. "Said meter or device was encased in an inclosure equipped with a lid or cover which, when properly in place, lies flush with the sidewalk; that said defendant had a duty to use reasonable care in maintaining said meter or device and cover so as not to endanger those lawfully walking upon said public sidewalk." On March 30, 1951, Lillian J. Musgrove, while lawfully walking with due care on said sidewalk, walked upon the lid or cover of the water meter. The lid or cover gave way causing her leg to be caught in said

opening. As the result she suffered great injury, "all of which injuries and damages were caused by the carelessness, recklessness and negligence of both of the defendants, their agents, servants and employees in failing properly to replace and fasten securely the lid or cover on the aforesaid water meter or device, in allowing said cover to remain unsecured and in an unsafe condition and in failing to give a notice or warning of the dangerous condition of said lid or cover."

The testimony, for the purposes of this case, follows. The appellee, Lillian J. Musgrove, testified that she was walking on the said sidewalk on the date alleged, in the dark, and stepped with her right foot down the concealed water meter hole there. She went first to the police station for aid for the injuries suffered as the result thereof, and was sent from there to a hospital.

Mr. Edward W. Lechlider, employed by the Montgomery County Police Department, testified that Mrs. Musgrove, one of the appellees, came to the police station on March 30, 1951, and complained that she had fallen into a hole covered with an iron lid on Thayer Avenue. He found the hole in front of a building being constructed at 957 Thayer Avenue. He found that the meter lid was not locked and was loose on top of the frame. As a result the lid was in such a position that it could swivel with "a little extra weight on either side of it". He then went back to the police station to get a light and when he returned someone had put the lid back in place and locked it and it was then very secure. He said that quite a number of people walk every day on Thayer Avenue where the water meter was placed.

Mr. Roger C. Finneyfrock, an employee of the appellant, a municipal corporation, testified in effect that on March 7, 1951, while helping to make a tap on the water main, he installed this water meter, over which the appellee fell, in the sidewalk on Thayer Avenue, a public street in Silver Spring. He was familiar with the water meter here in question. He said that it was

his responsibility to place the lid on the meter. To put the lid back a key with a special screw, similar to a cork screw, is used. On March 7, 1951, with this key, he set the meter, put the top on the meter, and fastened it down "tight". When he left the meter that day it was properly locked. He did not know whether any employee of the appellant had since removed the lid. The appellant and plumbers have access to these meters. The appellant does not turn on the water. This is done by the plumbers who have these keys. He also testified that the lid on the meter could be removed with a wrench or a pair of pliers. He further said that from his experience the lid could not be loosened by weight alone.

Mr. George L. Gardner, an employee of the appellant, testified that this meter was covered with a ten or twelve inch meter cover, which, when placed over the meter, is level with the sidewalk. He also said many of the employees of appellant carry the meter keys with them. He stated that there had been instances where the lids to the meters had been taken off with an ordinary monkey wrench by children.

Mr. Joseph Tillson, one of the defendants here on the theory that one of his agents or employees removed the lid from the meter, and against whom the appellees took a voluntary non-suit, gave the following testimony. He and his wife, on March 30, 1951, were the owners of the property at 957 Thayer Avenue, Silver Spring. On that date they were erecting a small office building there. The brick work was up. He did not know whether the building was closed or plastered at that time. According to the record, the plumbing work had been completed about a week before. He had seen the water meter in the sidewalk which would service the building he was constructing. To the question: "Would it be necessary, in the construction of a building, to tap in to the water meter in question?", he replied: "If you had water, it would be." He did not remember whether the water was turned on to the building. He said the

water could have been turned on. He further said: "Nothing was done as far as I know in connection with the meter. The only thing I know of that was done was when [sometime in March, 1951] the Sanitary Commission tied into the building line, ran the water into the building line."

The appellees contend that there was evidence to show negligence on the part of the appellant in using an unsafe cover for the meter, and further that there was evidence tending to show negligence on the part of appellant in using an unsafe locking device for the cover. However, we must find that any question of the aforesaid alleged negligence on the part of the appellant was taken from the jury by the charge of the trial judge. Among other instructions to the jury, he said: "And there is no question in this case that the equipment was not modern and that it was not the proper class or kind of equipment to use. The negligence that they claim is the failure to use that equipment properly; and that was the first act of negligence claimed. The second act of negligence that they claim is that the defendant, owing the duty to use reasonable and proper care so as not to do injury to others, was negligent in permitting plumbers to connect the water to the houses. * * * In other words, what I mean by that is, if you find as a matter of fact that some child or somebody that we don't know anything about caused the top of that opening to be in the condition that it was and to be off or to be so that it could be removed and in its locked position, then there wouldn't be any negligence on the part of the defendant that would have caused these injuries and consequently your verdict would then be for the defendant."

Rule III, Trials, Rule 6, Instructions To The Jury, (c) and (d), provide as follows: "(c) *Objections.* Before the jury retires to consider its verdict, any party may object to any portion of any instruction given or to any omission therefrom or to the failure to give any instruction, stating distinctly the portion or omission

237

or failure to instruct to which he objects and the specific grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury. (d) *Appeal.* Upon appeal a party, in assigning error in the instructions, shall be restricted to (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct distinctly objected to before the jury retired and (2) the specific grounds of objection distinctly stated at that time; and no other errors or assignments of error in the instructions shall be considered by the Court of Appeals." The purpose in requiring exceptions to be made to the instruction of the trial judge before the jury retires is to give that judge an opportunity to correct or add to his instructions, matters either stated erroneously or omitted. *Feinglos v. Weiner,* 181 Md. 38; *Barone v. Winebrenner,* 189 Md. 142, 145. No objection was made to the parts of the charge above quoted. Therefore, under the Rules above quoted, the trial judge removed from the consideration of the jury any question as to whether the equipment was modern standard equipment or whether it was the proper class or kind of equipment to be used. This Court is without jurisdiction to pass upon that part of the charge. *Smith v. Carr,* 189 Md. 338, 340-341; *State v. Greaves,* 191 Md. 712, 717-718; *Goldman v. Johnson Motor Lines,* 192 Md. 24, 30; *Sieland v. Gallo,* 194 Md. 282, 285-286. Furthermore, there was no claim in the declaration that the equipment was not modern, standard equipment or that the proper class or kind of equipment was not used.

Under this charge, therefore, the only question left to the jury was whether the appellant failed to use the equipment properly or whether it was negligent in permitting the plumbers to connect the water to the houses.

As above stated, the appellant filed a motion for a directed verdict at the conclusion of all the testimony. In deciding whether this motion should have been granted,

the trial judge assumes the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom which tend to support the plaintiff's right to recover. However, in an action to recover damages for injuries caused by the alleged negligence of the defendant, the burden of proof is on the plaintiff to prove that there was a neglect of duty by the defendant *and that the injuries sustained were the direct consequence of such neglect of duty.* Where the plaintiff has not shown by any evidence that the injuries sustained were a direct consequence of such neglect of duty, and there is no rational ground upon which a verdict for the plaintiff can be based, the court should grant the motion for a directed verdict. Speculation cannot be allowed to stand for proof. *Baltimore & Potomac R. R. Co. v. State, Use of Abbott,* 75 Md. 152, 158-159; *Barker v. Whitter,* 166 Md. 33, 39; *Eisenhower v. Baltimore Transit Co.,* 190 Md. 528, 533, and cases there cited; *Heffner v. Admiral Taxi Service,* 196 Md. 465, 473; *Olney v. Carmichael,* 202 Md. 226, 96 A. 2d 37. 2d 37.

There is no evidence or natural inference in this case that the appellant or any of its agents or servants unlocked this meter or even touched it in any way from March 7, 1951, when Mr. Finneyfrock testified that he made the tap on the water main, installed the meter, set the meter, put the top on the meter and fastened it down tight, until after Mrs. Musgrove's accident on March 30, 1951. Nor is there any evidence in this case that any plumber opened the meter, or had anything to do with the meter from the time it was installed on March 7, 1951, until March 30, 1951, when the accident occurred. Under the evidence a child could have removed the cover. After the instruction to the effect that, if the jury found that some child or someone else caused the top to be opened, there would be no negligence on the part of the defendant, the jury must have found that the negligent act was done by some agent or employee or a plumber to whom the ap-

pellant had given a key. There is no evidence and no rational grounds upon which such a finding could be made. Mr. Tillson, as above stated, testified that it would not have been necessary to tap into this water meter until the water was turned on in his building and he did not know whether the water had been turned on. This is in no way contradicted. There is no evidence that the water had been turned on or whether the meter showed that any water had passed through it. The motion for a directed verdict in favor of the appellant should have been granted and the judgment must be reversed.

It is not necessary that we pass upon appellant's contention that, as a municipal corporation, it was not liable for the injury here claimed because it had no actual or constructive knowledge of the alleged defective condition as discussed in *Mayor & City Council of Baltimore v. Walker,* 98 Md. 637; *Engle v. Cumberland,* 180 Md. 465; *Neuenschwander v. Washington Surburban Sanitary Commission,* 187 Md. 67.

*Judgments reversed, with costs.*